# Richmond

## James L. Camp, Jr., et al. v. J. G. Bryant, Administrator, etc.

November 21, 1938.

Record No. 1984.

Present, Campbell, C. J., and Holt, Gregory, Eggleston and Spratley, JJ.

The opinion states the case.

*John C. Parker, Jr.,* for the plaintiffs in error.

*Junius W. Pulley* and *James G. Martin & Son,* for the defendant in error.

EGGLESTON, J., delivered the opinion of the court.

J. Fenton Bryant, Jr., was badly injured as the result of a head-on collision between an automobile, driven by himself, and another operated by Elijah Joyner, which

occurred near Franklin, in Southampton county, on the afternoon of May 26, 1936. Bryant sued James L. Camp, Jr., and James L. Camp, III, alleging that the collision was caused by the negligent manner in which a car owned by James L. Camp, Jr., and operated by James L. Camp, III, his agent, had been stopped on the highway. Bryant alleged that in his effort to avoid running into the rear of the Camp car, the Bryant car collided with the Joyner car. Joyner was not made a party defendant to the proceedings. There was a verdict in favor of Bryant against both Camps, on which the trial court entered the judgment which is here for review. Since the entry of the judgment Bryant has died and the cause has been revived in the name of J. G. Bryant, his administrator. For convenience the parties will be referred to as they appeared before the court below.

The collision took place during the daytime on a straight stretch of a secondary state highway running approximately north and south between Franklin and Sedley. The weather was clear and the road was dry and dusty, the hard-surface having been recently scarified or broken up preparatory to its repavement.

Shortly before the accident the Camp car was proceeding southwardly along this road toward Franklin. It was occupied by James L. Camp, III, and three young companions who were returning home from the near-by country club. On leaving the club David Forbes, one of the party, asked permission to drive and young Camp gave his assent. It was understood between the two that Camp would take the wheel before they reached the main highway near Franklin. As the car proceeded along a straight stretch of the road, at Camp's direction it was brought to a gradual stop, the ignition was cut off, and the two young men prepared to exchange places. The right wheels were on the shoulder but the greater portion of the car rested on the main-traveled part of the road.

As the car came to a stop and young Camp was in the act of leaving his seat to take his position at the wheel,

the Bryant car was observed coming out of a curve some
three hundred yards to the rear. Almost simultaneously
the Joyner car, proceeding northwardly toward Sedley,
came into view around a curve some ninety yards ahead
of the Camp car. Having observed the approach of the
two cars Camp and Forbes decided to allow them to pass
before exchanging seats. While they waited the Bryant
and Joyner cars collided head on. The Camp car was not
struck.

Bryant testified that when he came around the curve,
about three hundred yards north of the place where the
Camp car had stopped, he was driving thirty or thirty-five
miles per hour, and that due to the great amount of dust
on the road he did not see the car ahead until he was within
thirty-five or forty yards of it. He "assumed" that it was
moving and continued without slackening his speed until
he was about eighteen or nineteen yards from it. He then
realized that the car was not moving but standing in the
road. He put on his brakes, cut his car sharply to the left,
and attempted to pass the standing car on its left. But
this maneuver was unsuccessful. The Bryant car skidded
some sixty-odd feet along the broken surface of the road,
headed across the highway at an angle of forty-five degrees,
and its right front struck the left front of the oncoming
Joyner car, which, the plaintiff testified, he had not seen
at all.

Joyner, however, had observed and comprehended the
situation. He pulled his car over against the bank on his
right and had slowed down almost to a standstill when the
collision occurred.

It is unnecessary that we consider the several assign-
ments of error and the interesting questions raised by some
of them. The principal assignment, and the only one we
need notice, is that the trial court erred in not setting aside
the verdict and entering a final judgment for the defendants.
In our opinion this assignment is well taken. For even if
it be assumed that the driver of the Camp car was negli-
gent under the circumstances in stopping it partly on the

main-traveled portion of the highway, yet the testimony of the plaintiff himself and the undisputed physical facts show beyond question that the plaintiff was guilty of negligence which, if not the sole proximate cause of the collision, at least proximately contributed thereto.

As we have seen, the collision occurred in the daytime on a straight stretch of road. The undisputed evidence is that the road is straight for a distance of six hundred and seventy-four feet northwardly from the point where the Camp car was standing. Allowing for a slight curve, the line of clear visibility is about nine hundred feet. And yet the plaintiff's own testimony is that he did not see the Camp car until he was thirty-five or forty yards away from it, and never saw the Joyner car at all. Moreover, he says that not until he was within eighteen or nineteen yards of the rear of the Camp car did he observe that it was not moving.

The plaintiff further testified that the road was "very dusty," that the visibility was "very poor," and that this accounted for his not seeing the Camp car sooner and for his not observing the oncoming Joyner car.

In the first place, it is difficult to comprehend how the dust could have been so thick as to blot out the plaintiff's view of the road more than forty yards ahead of him when all of the other witnesses at the scene had no difficulty in seeing the Bryant car approaching at a much further distance. The occupants of the Camp car saw the Bryant car as it came around the curve some three hundred yards to the rear. Joyner, who was called as a witness for the plaintiff, first saw the approaching Bryant car when it was nearly four hundred yards away, or about three hundred yards to the rear of the Camp car. And when he realized that the plaintiff was not stopping for the Camp car, he (Joyner) pulled his car entirely off the road and brought it almost to a stop in an effort to avoid a collision. If these witnesses are to be believed, then the plaintiff could easily have seen both the Camp and Joyner cars if he had been exercising a reasonable lookout.

But if we take the plaintiff's testimony at its full face value it convicts him of negligence. Analyzed, his statement is that he drove into a cloud of dust which was so dense that he could not tell whether a car, just forty yards ahead of him on a straight road, was moving or standing still, and yet he continued at unabated speed until he had to choose between running into the rear of this car or driving on the wrong side of the road without being able to see that other traffic was approaching from the opposite direction.

██ When the plaintiff reached this dense cloud of dust he should have reduced his speed and brought his car under control for traffic ahead of him. He admitted that the dust indicated that there was a car ahead. Furthermore, when he observed the defendants' car a short distance ahead, and was uncertain whether it was moving or standing, he should have cut down his speed and brought his car under control, or even to a stop in order to avoid a collision.

Certainly he had no right to proceed at an undiminished speed and cross over to the left side of the road and attempt to pass the Camp car when, according to his own admission, his vision was so obscured that he could not see that another car was approaching from the opposite direction.

██ While the plaintiff claimed that he was proceeding at from thirty to thirty-five miles an hour as he approached the Camp car, the physical facts show that his automobile was not under proper control, for when the brakes were applied it skidded more than sixty feet before striking the Joyner car with terrific force.

In *Clark* v. *Parker,* 161 Va. 480, 171 S. E. 600, we upheld the action of the trial court in setting aside a verdict for the plaintiff on the ground that the latter was guilty of contributory negligence in driving at a too rapid rate of speed along a road where the dust was so thick as to nearly obscure the lights of an approaching car.

The present case is, in our opinion, readily distinguishable from the two recent cases relied on by the plaintiff in which we held that the drivers of the cars involved were

not guilty of negligence as a matter of law in running into unlighted vehicles negligently parked on the highway at night. *Armstrong et al.* v. *Rose,* 170 Va. 190, 196 S. E. 613; *Ferguson* v. *Virginia Tractor Co., Inc.,* 170 Va. 486, 197 S. E. 438.

In those cases neither driver saw the parked vehicle, nor was there anything to put him on notice of its presence. In the instant case the plaintiff admitted that the dust indicated to him that there was traffic on the road ahead. Moreover, he admitted that he saw the Camp car ahead, and despite the fact that he was unable to tell whether it was moving or standing, he continued at an unabated speed until he was faced with the necessity of either running into the rear of this car or driving to the left of the road when, according to his own admission, his vision was so obscured that he could not see the oncoming Joyner car.

In these circumstances it is clear that the plaintiff's own negligence proximately contributed to the collision, if, indeed, it was not the sole proximate cause thereof.

The judgment complained of will be reversed and a final judgment entered here for the defendants.

*Reversed and final judgment.*