# Richmond

## SAVAGE TRUCK LINE, INCORPORATED v. C. H. TRAYLOR, JR., TRADING AS POCAHONTAS HATCHERY.

March 10, 1952.

Record No. 3906.

Present, All the Justices.

The opinion states the case.

*Rixey & Rixey, I. W. Jacobs* and *Robert W. Arnold, Jr.,* for the plaintiff in error.

*Ernest W. Goodrich* and *Breeden & Hoffman,* for the defendant in error.

MILLER, J., delivered the opinion of the court.

This litigation arose out of a motor vehicle accident which happened on March 25, 1950, at about 4:15 a. m. on U. S. Highway 460 about six miles east of the city of Petersburg.

A tractor trailer truck owned and operated by Savage Truck Line, Inc., hereinafter called Savage, was, while standing on the highway, struck from the rear by a truck owned by C. H. Traylor, Jr., driven by his employee, James Purdie. The collision resulted in considerable damage to both vehicles and in the partial destruction of a cargo of live crated chickens being transported on Traylor's truck.

Action for property damage was instituted by Savage, and a cross claim was filed by Traylor. From a verdict and judgment which awarded $4,000 to Traylor and denied any recovery to Savage, this writ of error was granted.

Where the accident occurred, the highway extends in an easterly and westerly direction and is straight for a mile or more each way from the scene of the mishap. The road is divided into four traffic lanes, two of which accommodate eastbound and two westbound vehicles. From a point about 100 yards west of where the accident took place there is a slight down grade to the immediate point of collision, there being a vertical drop in the road of fourteen feet in the lateral distance of 900 feet.

Savage insists that the collision was caused solely by Purdie's negligence. It contends that (a) the verdict and judgment rendered against it on Traylor's cross claim should be set aside, and (b) we should enter judgment against Traylor upon its original claim, or if that be not done, then a new trial should be awarded upon its claim against Traylor.

Three tractor trailer trucks owned and operated by Savage were proceeding eastwardly along the right, or most southerly, lane of the highway when the front truck developed some mechanical defect, and its driver signaled for the other two trucks to stop. Thereupon the three vehicles were stopped in line in the most southerly lane about thirty feet apart. Two of the drivers undertook to ascertain and remedy the trouble and the third, Anthony Alessi, driver of the rear truck was delegated to place flares on the road to warn approaching traffic.

All of the trucks were equipped with headlights which were lighted, and along the top of the rear part of each trailer there were five red lights. Each truck also bore the usual tail or stop light located near the bottom of the trailer. As the road was straight and the trucks were standing in line, only the several lights on the rear of the most westerly trailer were unobstructedly visible to traffic approaching from that direction.

The evidence discloses that the three trucks had been thus standing for fully ten minutes when Traylor's truck, heavily loaded with crates of poultry, approached from the west along the same lane at a speed of about 35 miles per hour. No torches or flares had been placed upon the highway as required by section 46-260, Code of Virginia, 1950, but there is conflict in the evidence as to whether a burning fusee was upon the rear bumper of the most westerly trailer. That conflict, has, however, been resolved by the jury in favor of Traylor, and we must consider the evidence in the light most favorable to that litigant.

Savage insists that the uncontradicted evidence convicts Purdie of contributory negligence as a matter of law and thus bars any recovery by his employer, Traylor. It also says that it was not guilty of any negligence, but if so, that its negligence was remote in point of time and circumstance and did not constitute an efficient or proximate cause of the collision, and thus it should recover the damage done to its truck. To sustain these contentions, it relies chiefly upon the testimony of Purdie who was the only witness to testify as to the speed at which he was driving and what he saw and did as he approached the standing trucks.

It is conceded that immediately before and at the time of the accident the inside lane for eastbound traffic and both lanes for westbound traffic were unobstructed and free of vehicles. The night was clear and the atmospheric conditions good.

Summarized, the material parts of Purdie's testimony concerning the manner in which he approached the standing truck and what he did after he was apprised of the presence of a vehicle or vehicles in the lane ahead of him is as follows:

He was traveling at about 35 miles an hour and as soon as he came over the crest of the slight elevation to the west of where the collision occurred, he saw the red lights of the truck in the lane about 100 yards ahead but as he thought it was moving, he did nothing to slow down and made no effort to turn his truck into the passing lane until he was about 30 or 40 yards from the Savage truck when he realized that it was not moving. He then describes what he did as follows:

"A. When I found out they were parked, I knocked my signal light down to give a left-hand turn, and I went to—the truck wasn't slowed up fast enough. I took my foot off, pushed the brake off to slow it up, to make the turn, and I missed the brake and hit the accelerator. I took—everything I could—took my foot off and it ran in back of it.

"Q. Did you ever get your foot back on the brake?

"A. Yes, sir, I got it back."

Having stated that he traveled about 60 or 70 yards after he saw the red lights on the truck ahead before he realized that it was parked, he was asked if he did not then, when 30 or 40 yards from the standing vehicle, still have plenty of time to turn out and avoid it, and he answered as follows:

"A. Like I told you, when I hit that brake I missed that brake and hit the accelerator, the gas.

"Q. You had plenty of time?

"A. Oh, yes.

"Q. As it turned out, you could have turned?

"A. Sure, I would."

&ast; &ast; &ast; &ast; &ast; &ast; &ast; &ast;

"Q. You could have passed all right, couldn't you?

"A. (The witness nodded.)

"Q. You had plenty of time, didn't you?

"A. Yes, sir, if it hadn't occurred like it is, sure."

&ast; &ast; &ast; &ast; &ast; &ast;

"Q. James, how do you account for the fact that your feet slipped off the brake?

"A. Well, I pushed on the brake, I missed. I shoved on the

brake all right but in the slowing up I took my foot off. After it slowed up, I hit the gas, struck the gas.''

He was also asked if he had not admitted to State Trooper R. S. Peck that the accident was due to his fault, and he gave the following answers:

''A. Well, I felt it was my fault because I tried, done everything I could do to keep from hitting him, and I just ran in back of him. Like I told, I done all I could to keep from hitting after I found they were parked, do you understand?

''Q. And that is what you meant when you told him it was your fault?

''A. Yes. I done all I could to keep from hitting him, after I found out they were parked.''

In addition to the testimony of Purdie as to how the collision occurred, Officer Peck and Alessi testified without objection to certain admissions made by Purdie about an hour after the accident.

Officer Peck said that when he asked Purdie ''just what happened,'' Purdie replied, ''Boss * * * I am not going to tell you a lie about it at all. * * * I came up the road * * * saw the truck * * * and I put my signal light on to turn out * * * and I put my foot on the brake to slow down but my foot slipped off the brake and slipped on the accelerator and * * * I plowed into the back end of it.''

The following question was also asked Officer Peck, and he replied as below:

''Q. Did the driver of the chicken truck make any complaint to you about the fact that he could or could not see the Savage trailer?

''A. He made a statement to me that he saw the Savage trailer, the Savage truck, parked on the road.''

Alessi's testimony as to what Purdie stated to him follows:

''Q. Now, the colored man who was driving the chicken truck, did he make any statement after the accident occurred?

''A. Yes, he did. I asked him did he see the truck or how come he hit it, didn't he see it. He said yes, he saw it. As a matter of fact, he said he put his left turn signal on to move to the center lane, the center lane of the right side, and he said that he was about to move his wheels so that he could get over in that center lane, and that he wanted to slow down when he saw the fusee, that he put his foot up on the brake pedal and

slipped off and hit the gas. That is the only explanation I got. He said he just got excited, he hit the truck and that was all he remembered about it that he told me about.

"Q. He told you he had plenty of time to put on signal lights?

"A. Yes, he told me he had put on his signal lights to give a proper signal that he was going out into the center lane."

At the trial Purdie denied that any burning fusee was at or upon the truck.

From about the time that Purdie saw the red lights ahead and was thus apprised of the presence of the truck, he was, or should have been in the exercise of ordinary care, aware that the distance between the two vehicles was diminishing and that he would collide with the other vehicle unless he drove in such a manner as to be able to slow down sufficiently or change his course in time to avoid a collision. Yet not knowing whether the Savage truck was standing or moving, he traveled about 60 or 70 yards of the 100 yards between the two vehicles without turning toward the passing lane or slowing down his heavily loaded truck. Alerted though he was to the presence of the truck ahead, he did nothing whatever to avoid striking it if it were in fact standing or moving slowly until he had reached a place on the road dangerously close to that vehicle. Then, after he belatedly concluded that the vehicle ahead was not moving, he attempted to apply his brakes but struck the accelerator and thus rendered the collision inevitable.

In *Camp* v. *Bryant,* 171 Va. 390, 199 S. E. 469, the plaintiff, Bryant, obtained a verdict and judgment upon facts and circumstances quite similar to those upon which Traylor relies to sustain this judgment. However, we there held that Bryant was guilty of contributory negligence as a matter of law and upon setting aside the verdict and judgment said:

"* * * Furthermore, when he observed the defendant's car a short distance ahead, and was uncertain whether it was moving or standing, he should have cut down his speed and brought his car under control, or even to a stop in order to avoid a collision."

The uncontradicted testimony of Purdie, which is to some extent confirmed by the testimony of Alessi and Officer Peck, conclusively discloses that he was guilty of negligence which efficiently contributed to the collision and thus requires

that the verdict and judgment in favor of Traylor upon his cross claim be set aside.

We find no merit in the contentions of Savage that it was free of negligence, or if not, that any negligence on its part due to its failure to place flares upon the highway was remote and wholly insulated by subsequent and intervening negligence on Purdie's part. On the contrary, we think that it was a question for the jury as to whether or not its negligence efficiently contributed to the collision. *Harris Motor Lines, Inc.* v. *Green,* 184 Va. 984, 37 S. E. (2d) 4, 171 A. L. R. 359.

The failure of its drivers for ten minutes or more to comply with the mandate of section 46-260, Code of Virginia, 1950, is ample proof of negligence. *Crist* v. *Fitzgerald,* 189 Va. 109, 117, 52 S. E. (2d) 145. That section is mandatory and requires that as promptly as may be reasonably practicable three flares or torches be placed at designated locations on the roadway. One of the flares must be placed in the center of the traffic lane occupied by the disabled truck, not less than 40 paces therefrom in the direction of traffic approaching in that lane, and another at the traffic side of such truck. Had these requirements been complied with, it is quite probable that Purdie would have seen the warning light of one or both of the flares when he reached the crest of the elevation 100 yards to the west, and by these flares would have been caused to realize sooner that the truck ahead was not moving.

The violation of a statute of this character constitutes negligence *per se.* If it efficiently contributes to a collision and resultant damage to the wrongdoer, he may not **recover.** Unquestionably the driver of the disabled truck should have foreseen that an oncoming vehicle might collide with his truck unless the required flares were placed on the road.

"But an intervening cause relied upon as interrupting the sequence of events following a negligent act must not itself be a happening that ought to have been foreseen. 'An intervening cause will not be deemed to have broken the causal connection if the intervening cause was foreseen or reasonably might have been foreseen by the wrongdoer.' *Jefferson Hospital* v. *Van Lear,* 186 Va. 74, 82, 41 S. E. (2d) 441, 444.

" '* * * To be a superseding cause, whether intelligent or not, it must so entirely supersede the operation of the defendant's negligence, that it alone, without the defendant's con-

tributing negligence thereto in the slightest degree, produces the injury. * * *' *Richmond* v. *Gay,* 103 Va. 320, 324, 49 S. E. 482, 483; *Appalachian Power Co.* v. *Wilson,* 142 Va. 468, 480, 129 S. E. 277, 281." *Scott* v. *Simms,* 188 Va. 808, 817, 51 S. E. (2d) 250.

Though Purdie's negligence in point of time may have been slightly subsequent to the moment when the negligence of Savage first began, yet the latter's negligence never ceased but was active and effectual up to the immediate moment of collision. It was of the character that is flagrant and dangerous to the traveling public. It continued so long as the mandate of the statute was disregarded, for the danger intended to be guarded against remained unabated until the statute was complied with.

The jury was justified in believing, and may well have concluded, that had the flares been placed as required by the statute, Purdie, though inattentive and negligent as he clearly was, might have been sooner apprised of the fact that a standing vehicle was on the road ahead, and thus have been afforded more time and a better opportunity to avoid the collision.

The verdict of the jury which found in favor of Traylor upon his cross claim and against Savage upon its claim definitely shows that it believed that the negligence of Savage's employees was the sole proximate cause of the collision. Though we do not agree that Purdie was free from negligence that contributed to the collision, we are of opinion that it was well within the province of the jury to conclude that the negligent failure of Savage's employees to comply with the statute was an efficient contributing cause of the collision. That they must necessarily have believed when they found that Savage's negligence was the sole proximate cause of the collision.

For the reasons stated, the judgment insofar as it allows a recovery by Traylor against Savage is reversed, and judgment will be here entered denying recovery to either litigant.

*Reversed and final judgment.*