Kelly C. MORETZ, a citizen and resident of Kingsport, Sullivan County, Tennessee, Plaintiff,

v.

GENERAL ELECTRIC COMPANY, a corporation organized and existing under the laws of the State of New York, and doing business in Roanoke County, Virginia, Defendant (MASON & DIXON LINES, INCORPORATED, a Corporation organized and existing under the laws of the State of Tennessee, and doing business in the State of Virginia, Third-party Defendant).

Civ. A. No. 892.

United States District Court
W. D. Virginia,
Roanoke Division.

Feb. 23, 1959.

A. Linwood Holton, Jr., Roanoke, Va., William S. Todd, Kingsport, Tenn., Dodson & Dodson, Kingsport, Tenn., for plaintiff.

Fred B. Gentry, Roanoke, Va., for defendant and third-party plaintiff.

John H. Thornton, Jr., Roanoke, Va., for third-party defendants.

THOMPSON, Chief Judge.

This is a tort action by Kelly C. Moretz, a citizen of Tennessee, plaintiff, against the General Electric Company, a New York corporation, defendant, hereinafter referred to as "G. E.," for damages sustained as a result of the defendant's alleged negligence in improperly

loading a trailer, hauled by the plaintiff in his capacity of "over-the-road" driver for the Mason & Dixon Lines, Inc., a Tennessee corporation, an interstate common carrier, hereinafter referred to as "Mason-Dixon." Over plaintiff's objection, defendant G. E. was permitted to implead the plaintiff's employer, Mason-Dixon, and seeks to recover from this third-party defendant, as contribution or indemnity, any amount for which G. E. may be liable to the plaintiff.

The issues of negligence as to the plaintiff Moretz, the defendant G. E., and the third-party defendant, Mason-Dixon, were tried to a jury. The question as to liability as between the plaintiff Moretz and the defendant G. E. was submitted to the jury on all the facts in the case and the Court's charge. The jury returned a verdict for $35,000 against the defendant G. E.

The jury was instructed that it could not find a verdict for Moretz against his employer, Mason-Dixon, as he had not sued Mason-Dixon and that he could not sue his employer because it was protected from suit by its employees for injuries sustained in the course of their employment under the provisions of the Tennessee Workmen's Compensation Law.

After the jury returned its verdict for the plaintiff against G. E., the Court submitted to the jury the question of negligence as between the defendant G. E. and the third-party defendant, Mason-Dixon, and the jury found as follows:

"We, the jury, find that the Mason and Dixon Lines, Incorporated, was guilty of negligence which proximately contributed to the accident and resulting injury of Kelly C. Moretz."

The case is now before the Court as follows:

I.

As between Moretz and G. E., on the motion of G. E. for judgment n. o. v., or, in the alternative, a new trial.

II.

As between G. E. and Mason-Dixon on the motion of G. E. for indemnity or contribution from Mason-Dixon.

III.

On motion of Mason-Dixon to dismiss as to it.

The facts are:

There were certain statutes and tariffs governing the duties and responsibilities of shippers and carriers of goods in interstate commerce. The I. C. C. promulgated certain regulations providing that trucks must be safely loaded, and that drivers must inspect their trucks before driving them on the highway. The American Trucking Association, Inc. promulgated certain tariffs applicable to all agreements entered into between carriers and shippers to the effect, as far as here pertinent, that when a shipper loads a trailer with objects of greater dimensions than those specified therein, which was the case here, the shipper is responsible for securely loading the cargo in the trailer. These statutes and tariffs are important insofar as they pertain to the legal relationship and responsibilities obtaining between Mason-Dixon and G. E.

Mason-Dixon had placed an empty trailer at the G. E. loading dock. Later, F. C. Brown, a 'city driver' for Mason-Dixon, went to the loading dock at the G. E. plant to pick up the loaded trailer and bring it to Mason-Dixon's city terminal in Roanoke, and, it not being sealed, looked in the rear doors and noted that there was an aisle approximately 18" wide in the center of the trailer with heavy items of cargo on both sides. He told the G. E. loading dock personnel about this, and asked that the load be braced or chocked in place. They refused to brace it, saying that it was unnecessary to do so, and that if the cargo did shift, it would not be damaged. Brown then hauled the trailer to the Mason-Dixon city terminal, and told the Mason-Dixon dispatchers that the load needed to be braced, and they promised to attend to it. The trailer was not sealed when Brown delivered it to the city terminal, and the manner in which it was loaded could easily have been inspected

by Mason-Dixon before sealing it. The time was approximately 3:30 p. m.

At approximately 4:00 p. m., the plaintiff Moretz arrived at the terminal with another trailer load originating in Kingsport, Tennessee. He was then instructed by the dispatcher to haul the trailer loaded with G. E. cargo back to Kingsport, Tennessee. Moretz made the required routine inspection of the tractor-trailer. He could not check the manner in which the cargo was loaded, as the trailer had then been sealed.

Near Salem, Virginia, he came to an intersection with a sharp left turn, and as he negotiated this curve at a speed of approximately 15 m. p. h., he heard a thud inside the body of the trailer. His front wheels lifted off the ground, and the truck turned over on its side.

The plaintiff received certain injuries, and it is for these injuries that the present action was brought. The medical testimony showed that although the plaintiff had suffered from an anomaly of the spine since birth, he had suffered a severe spondylolisthesis as a result of the accident which incapacitated him for some time, and may prevent him from ever driving a truck again. Moretz's doctor is of the opinion that he will not be able to return to his occupation as a truck driver without undergoing a spinal operation.

The plaintiff's earnings for the two years preceding the accident averaged about $6,000 per year. He is a man of approximately 40 years, who knows no trade other than truck driving. He has had to undergo considerable pain and suffering, and has been unable to work since his accident.

### The Law

Jurisdiction is based upon diversity of citizenship between the plaintiff and defendant, and upon the amount in controversy.

The motion filed by the defendant G. E. will be considered first, as it pertains to the issues tried between the plaintiff Moretz and the defendant G. E.; and second, as it pertains to the issues tried between G. E. as third-party plaintiff and Mason-Dixon as third-party defendant for contribution or indemnity. Mason-Dixon's motion to dismiss will then be considered.

### I.

### The motion as to Moretz and G. E.

Substantially, the grounds assigned by G. E. in support of its motion relative to the issues tried to the jury are as follows: that Moretz was guilty of contributory negligence as a matter of law, that the verdict was excessive, that there was no evidence upon which to base a verdict, and that the Court erred in its ruling on evidence unspecified in the motion and in refusing to give instructions unspecified in the motion.

### Contributory Negligence

■ The issue of contributory negligence was one of fact, and was tried to the jury. The jury's verdict absolved the plaintiff of any negligence which proximately contributed to the accident. There was sufficient evidence on which to base such finding and in accordance with the verdict of the jury, the Court finds that the plaintiff was guilty of no negligence which would bar a recovery.

### Excessive Verdict

■■ The measure of damages is for the jury, and its award will not be set aside unless so great or so little as to shock the conscience. The plaintiff is a man in the prime of life, and up to the date of the accident had been earning from five to seven thousand dollars per year. Since that time, he has been unable to work at his regular occupation of driving a truck, has undergone considerable medical treatment, and will remain unable to work at his trade regularly until after serious surgery has been performed upon his spine. He has suffered physical pain in an extent known only to him; in fixing a reasonable amount of compensation in these circumstances, the jury had considerable discretion. The amount settled upon by the jury as adequate was not an abuse of this discretion. See Chappell v. White, 1946, 184 Va. 810, 819, 36 S.E.2d 524, 528.

## Other Grounds

■ Such objections as were timely made to the Court's ruling on the admissibility of evidence and instruction to the jury were considered and disposed of when interposed; the defendant has failed to state in its motion in what respect the Court erred in the rulings thereon. The Court adheres to its original rulings. In view of the verdict of the jury, the evidence presented must be considered in the manner most favorable to the plaintiff. Viewing the evidence in this light, the Court will not disturb the verdict of the jury, and judgment will be entered in favor of the plaintiff Moretz against the defendant G. E. in the sum of $35,-000.00, with interest at 6% per annum from this date.

## II.

### Motion of G. E. as it pertains to Mason-Dixon.

G. E. seeks contribution or indemnity from Mason-Dixon on three theories:

(1) that Mason-Dixon was guilty of such negligence as would constitute an intervening efficient cause and thus insulate G. E. from the liability resulting from its own negligence;

(2) that Mason-Dixon's failure to properly secure the cargo after being put on notice that it was in need of being braced, made Mason-Dixon a joint tortfeasor with G. E., and thus liable to G. E. for contribution; and

(3) that Mason-Dixon owed a contractual duty to G. E. to see that the cargo was safely loaded, that it had actual knowledge that the cargo was improperly loaded, failed to correct this situation, and thereby breached the alleged contractual duty and thus contends that Mason-Dixon should indemnify it for the damages assessed by the jury.

The first two contentions may be dealt with summarily.

### Intervening cause issue

(a) *Intervening superseding cause:*

■ The theory of intervening *superseding* cause was necessarily renounced by the jury in reaching its verdict in favor of the plaintiff under the instructions of the Court. The jury was instructed that

"* * * Before you can find the defendant, General Electric Co., liable in this case, you must believe from a preponderance of the evidence two facts: (1) that the General Electric Co. was guilty of some negligence which proximately caused the accident; and (2) that Moretz was guilty of no negligence which proximately contributed to the accident.

"* * * However, you are told that if you should believe that negligence of the Mason-Dixon Lines was the sole proximate cause of the accident, then there could be no liability on the General Electric Corp. and your verdict should be for the defendant, General Electric Corp.

"You are also told that if you should believe from the evidence that the negligence of Mason-Dixon Lines and the negligence of the injured plaintiff, Kelly C. Moretz, taken together or concurring, were the sole causes of the accident resulting in the plaintiff's injuries, the General Electric Corp. could not be liable and your verdict should be for the defendant, General Electric Corp.

"You are told, however, that if the accident was the direct and proximate result of the concurring negligence of the Mason-Dixon Lines and the General Electric Co., the negligence of the Mason-Dixon Lines would not bar the plaintiff's recovery, provided you believe that the plaintiff was guilty of no negligence which proximately contributed to the accident."

and under this instruction the jury could not have brought in a verdict for the plaintiff against G. E. unless it had first found that negligence of G. E. was a proximate cause of the accident; a fortiori, it could not have found that there was intervening negligence on the part of Mason-Dixon which was the sole

proximate cause of the accident. Savage Truck Line, Inc. v. Traylor, 1952, 193 Va. 579, 69 S.E.2d 478, 482.

(b) *Intervening concurring cause:*

■ The alternate theory of intervening cause here contended for by G. E. is that since Mason-Dixon was under a statutory duty to see that the cargo was safely loaded before allowing the shipment to be hauled over the highway, its failure to do so was negligence sufficient to insulate G. E. from the results of its own negligent loading.

As noted above, the jury found that G. E. was guilty of negligence which was a proximate cause of the accident. However, by their special verdict, the jury also found that the third-party defendant Mason-Dixon was guilty of negligence which was *a* proximate cause of the plaintiff's harm. The general rule of law applicable in such a situation is as follows:

"Failure of a third person to perform a duty owing to another to protect him from harm threatened by the actor's negligent conduct is not a *superseding* cause of the other's harm."

*Comment:*

"*a.* * * * The third person's failure to perform his duty in this respect makes him *concurrently* liable with the negligent actor for any harm which results from the actor's negligence and which would have been prevented by the performance of the third person's duty." Restatement, Torts § 452 (1934). (Emphasis added.)

See Savage Truck Line, Inc. v. Traylor, supra; Scott v. Simms, 1949, 188 Va. 808, 51 S.E.2d 250, 254. And see also Von Roy v. Whitescarver, 1955, 197 Va. 384, 89 S.E.2d 346, 352; Murray v. Smithson, 1948, 187 Va. 759, 48 S.E.2d 239, 241; Yonker v. Williams, 1937, 169 Va. 294, 192 S.E. 753, 755.

Under this rule, G. E. and Mason-Dixon would normally be jointly liable for any harm done to a third person as a result of their concurrent negligence.

Thus, but for the employer-employee relationship existing between Mason-Dixon and Moretz at the time of the accident, G. E. and Mason-Dixon would be liable as joint tort-feasors. Here, however, the rights of Moretz against his employer are fixed under the Tennessee Workmen's Compensation Law.

The rule contended for by G. E. is derived from Hubbard v. Murray, 1939, 173 Va. 448, 3 S.E.2d 397, and reiterated in Edgerton v. Norfolk Southern Bus Corporation, 1948, 187 Va. 642, 47 S.E.2d 409. In Hubbard the court stated the following general rule at page 401:

"Where a second tort-feasor becomes aware, or by the exercise of ordinary care should be aware, of the existence of a potential danger created by the negligence of an original tort-feasor, and thereafter *by an independent act of negligence* brings about an accident, the condition created by the first tort-feasor becomes merely a circumstance of the accident, but is not a proximate cause thereof. The original negligence of the first tort-feasor is legally insulated by the intervening independent negligence of the second tort-feasor, and the latter becomes the sole proximate cause of the accident." (Emphasis added.)

The cases distinguish themselves; in Hubbard, there was an act of negligence, and this act was followed by an entirely new and independent act, which resulted in the accident. Here, there was an act of negligence by G. E. in improperly loading the trailer, followed by passive inaction of Mason-Dixon after knowledge of the hazard created by the defendant G. E. Such inaction does not constitute an original act of negligence the equivalent of the situation set out in Hubbard. See Huffman v. Sorenson, 1953, 194 Va. 932, 76 S.E.2d 183, 188–189.

In the case at bar, the situation is the converse of Hubbard; here, there was misfeasance by the defendant, G. E., followed by non-feasance on the part of the third-party defendant, Mason-Dixon.

No controlling case has been cited to the Court, nor has independent research revealed any, where such passively negligent conduct as that of Mason-Dixon has been considered to be sufficient to insulate an actively negligent tort-feasor such as G. E. from the liability it has incurred as a result of a negligent act.

### Contribution Issue

The right of contribution is governed in Virginia by statute, § 8–627, Va.Code Ann., 1950, as amended, and this statute has been interpreted to mean that no right to contribution exists when the original party plaintiff has no right of action against the alleged joint tort-feasor. See Norfolk Southern R. v. Gretakis, 1934, 162 Va. 597, 174 S.E. 841. Here, the plaintiff had no right of action in tort against his employer since his rights against his employer were exclusively governed by the Tennessee Workmen's Compensation Law.[1]

Applying this principle of law, G. E. cannot have contribution from Mason-Dixon. Cf. Halcyon Lines v. Haenn Ship Ceiling & Refitting Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318. Thus, G. E. is remitted solely to the question of indemnity, as distinguished from contribution.

### Indemnity Issue

While indemnity has been described as "only an extreme form of contribution," Slattery v. Marra Bros., Inc., 2 Cir., 1951, 186 F.2d 134, 138, it is nevertheless distinguishable from contribution in that contribution springs from the equitable theory that where there is a common burden, as between joint tort-feasors, there should be a common right, while indemnity springs from an express or implied contract.

The contract theory of indemnity was recognized by the Supreme Court in Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133, and was reaffirmed in Weyerhaeuser Steamship Co. v. Nacirema Operating Co., 1958, 355 U.S. 563, 564–569, 78 S.Ct. 438, 2 L.Ed. 2d 491, and followed in Revel v. American Export Lines, D.C.E.D.Va.1958, 162 F.Supp. 279, 286–288. This contract theory of indemnity is illustrated by American District Telegraph Co. v. Kittleson, 8 Cir., 1950, 179 F.2d 946, where the Court held that where an employee of the party from whom indemnity was sought was injured as a result of the breach of a contractual duty between the employer and the tort-feasor, the third-party tort-feasor could enforce indemnity from the employer because the injury resulted from a breach of contract by the employer; adhering to this doctrine, the Court stated in Hunsucker v. High Point Bending & Chair Co., 1953, 237 N.C. 559, 75 S.E.2d 768, citing similar holdings of numerous other courts, that indemnity was based upon breach of a contractual relationship between the parties.

Thus, if indemnity is to be allowed in this case, it must be shown to spring from a contractual relationship between G. E. and Mason-Dixon. The situation here was not similar to the situation in Ryan or the other cases cited, but was rather the converse of those situations. Here the shipper undertook to load the carrier's trailer with its goods, and the carrier undertook to haul the loaded trailer to its destination. Since there was here involved a full trailer load, to be loaded by the shipper, the sections of the tariff[2] introduced by Mason-Dixon

---

1. Tenn.Code Ann. § 50–908. "Right to compensation exclusive.—The rights and remedies herein granted to an employee subject to Workmen's Compensation Law on account of personal injury or death by accident shall exclude all other rights and remedies of such employee, his personal representative, dependents, or next of kin, at common law or otherwise, on account of such injury or death."

2. American Trucking Associations, Inc. Rule 21. *"Heavy or Bulky Articles, Loading or Unloading.* Sec. 1. Where an article (or articles) in a single container or shipping form tendered, weighs 500 lbs. or more, or if the greatest dimension exceeds 8 feet or greatest and intermediate dimension each exceeds 4 feet, loading or unloading shall be performed by the shipper or consignee, as

became applicable to the undertaking by G. E. G. E. was therefore required to properly brace the load in the trailer. G. E. failed in this duty, although its personnel knew the load needed bracing. G. E. cannot now demand indemnity from Mason-Dixon because Mason-Dixon also failed to brace the load, a duty required of Mason-Dixon to protect the general public under 49 C.F.R. 192.9 and 49 C.F.R. 193.9.[3] Nowhere in the relationship of Mason-Dixon and G. E. can a contract for safe loading of the goods by Mason-Dixon be found; Mason-Dixon was liable for the safe carriage of the goods and was under a duty to the general public not to allow its truck to go on the highway unless its load was securely in place. However, Moretz, the injured party who sued G. E. was not a member of the general public, but was an employee of Mason-Dixon, whose rights as to Mason-Dixon are fixed under the Tennessee Workmen's Compensation Law.

G. E. has relied heavily upon United States v. Savage Truck Line, Inc., 4 Cir., 1953, 209 F.2d 442, 44 A.L.R.2d 984, in support of its contentions in the case at bar. However, a brief statement of the facts of Savage here pertinent illuminate the important distinctions between the two cases. In Savage, the shipper loaded the carrier's flat bed trailer truck with aircraft engines, attaching the engines improperly to the bed of the trailer. The agents of the carrier, including the driver of the truck, were aware of this fact. The driver came around a corner and one of the engines tore loose and fell upon a passing vehicle, damaging that vehicle and killing its driver. The representative of that deceased driver sued the shipper and recovered, and the shipper sought indemnity from the car-

the case may be. If requested, carriers will undertake, in behalf of the shipper or consignee, as the case may be, to employ additional help. No charge will be made for labor performed by the truck driver, but a charge of one dollar and fifty cents ($1.50) per hour or fraction thereof, for each man furnished, other than the truck driver, shall apply from time vehicle arrives at the place of pickup or delivery until shipment is loaded or unloaded, as the case may be.

"Exception—The provisions of Sec. 1 will not apply if such article (or articles), weighing less than 500 pounds:

"(a) exceeds 8 feet but does not exceed 22 feet in its greatest dimension and does not exceed 2 feet in any other dimension, or

"(b) if it does not exceed 10 feet in its greatest dimension and does not exceed 5 feet in its intermediate dimension and does not exceed 1 foot in its least dimension.

"Rule 22. *Dunnage or Temporary Blocking, Racks, Standards, Supports, etc.* Any temporary blocking, flooring or lining racks, standards, strips, stakes, or similar bracing, dunnage or supports not constituting a part of the vehicle when required to protect and make shipments subject to other than LTL or AQ ratings or rates secured for transportation must be furnished and installed by the shipper, except that such materials as may be furnished by the shipper will be installed by the carrier at a charge for labor necessary for such installation at the rate of one dollar and fifty cents ($1.50) per hour or fraction thereof, for each man. When materials are furnished by the carrier, charge therefor will be as per tariffs lawfully on file with the Interstate Commerce Commission or State regulatory body having jurisdiction."

3. 49 C.F.R. 192.9 *"Safe Loading.*—(a) *Distribution and securing of load.* No motor vehicle shall be driven or shall any motor carrier permit or require any motor vehicle to be driven if it is so loaded, or if the load thereon is so improperly distributed or so inadequately secured, as to prevent its safe operation.

"(b) *Doors, tarpaulins, tailgates and other equipment.* No motor vehicle shall be driven unless the tailgate, tailboard, tarpaulins, doors, all equipment and rigging used in the operation of said vehicle, and all means of fastening the load, are securely in place."

49 C.F.R. 193.9 *"Safe Loading*—(a) *Distribution and securing of load.* The load on every motor vehicle transporting property shall be properly distributed, and if necessary, secured, in order to prevent unsafe shifting of the load or unsafe operation of the vehicle.

"(b) *Fastenings secure.* No more (sic) (motor?) vehicle shall be driven unless the driver thereof shall have satisfied himself that the tailboard or tailgate, tarpaulins, spare tires, and all means of fastening the load are securely in place."

rier; the Fourth Circuit recognized that the duty of proper loading and safe carriage were placed, as to the general public, under 49 U.S.C.A. § 316(b) and 49 C.F.R. 193.9, upon the carrier, and that as a result of the failure of the carrier to discharge this duty, a member of the general public had been injured; therefore, it allowed indemnity.

In the case at bar, the liability for which G. E. seeks indemnity did not arise out of an injury to a member of the general public, but out of an injury received by an employee of the carrier, Mason-Dixon. Under these circumstances, the extent of liability of Mason-Dixon is fixed by the Workmen's Compensation Law in effect, here the Tennessee statute. Savage therefore differs from the case at bar in two respects; first, the damage for which indemnity was there granted arose out of a violation of a duty owed by Savage to the general public, not from an undertaking and a tariff modifying such undertaking as between the parties; and second, there was no question of the Workmen's Compensation Law concerned. Had the original plaintiff in Savage been the driver of the Savage truck, the case would be analogous and would dictate the outcome of the case before this Court.

However, such is not the case; since there was no contract between the parties here involved which can be made the basis of allowing indemnity to G. E. from Mason-Dixon, this Court is remitted to the consideration of whether or not indemnity can be allowed without a contract and directly in the face of the exclusive liability clause of the Tennessee Workmen's Compensation Law.

The only case interpreting this feature of the Tennessee Workmen's Compensation Law which has been decided by a federal court is Trammell v. Appalachian Electric Cooperative, D.C.E.D.Tenn.1955, 135 F.Supp. 512, 515. There, the Court stated, in interpreting the predecessor of the present statute:

"As between employer and employee, rights of the employee against the employer, as provided by the compensation law, are exclusive of all other rights and remedies. Sec. 6859. The employee may sue and recover from a negligent third party who has injured him. Sec. 6865. The employer who has paid or become obligated to pay compensation has a right of subrogation against the third party. But sec. 6865 makes no mention of a right of set-off, counterclaim, contribution, or indemnity in favor of the third party."

None of the numerous cases have gone so far as to require an employer whose duties as to his employees are fixed under a workmen's compensation statute, to indemnify a third-party tort-feasor who has, concurrently with the employer, injured an employee, where there is no contractual basis for the requirement. To require such indemnity would amount to an assault upon the Tennessee Workmen's Compensation Law. Therefore, it is held that such indemnity cannot here be enforced.

There appears to be a certain inequity in this situation because under the Tennessee Workmen's Compensation Law,[4] Mason-Dixon will now be subrogated to the recovery of Moretz from G. E. to the

4. Tenn.Code Ann. § 50–914. "Liability of third persons—Subrogation of employer—Limitation of actions.—When the injury or death for which compensation is payable under the Workmen's Compensation Law was caused under circumstances creating a legal liability against some person other than the employer * * * the injured workman * * * shall have the right to take compensation under such law and * * * may pursue his * * * remedy * * * against such other person. In the event of recovery from such other person by the injured workman * * * the employer shall be subrogated to the extent of the amount paid or payable under such law * * *."

amount of the workmen's compensation paid to Moretz, thus in effect relieving Mason-Dixon, a culpable tort-feasor, from the liability it would otherwise have incurred. In this connection, the result in Lovette v. Lloyd, 1953, 236 N.C. 663, 73 S.E.2d 886, at pages 891–892, is noted; there, the Supreme Court of North Carolina refused to allow such a subrogation, holding that

"It is contrary to the policy of the law for the employer, or his subrogee, the insurance carrier, to profit by the wrong of the employer. Brown v. Southern R., supra [204 N. C. 668, 169 S.E. 419]. For this reason, where the negligence of the third party and independent negligence on the part of the employer concur and proximately cause the injury to the employee, the third party may plead and prove the independent concurring negligence of the employer as a bar, *pro tanto*, to the recovery of the compensation paid or payable by the employer or the insurance carrier. (Citing cases.)"

The legislature of the state of Tennessee has not seen fit to introduce this doctrine into the Tennessee Workmen's Compensation Law. Equitable considerations to the contrary notwithstanding, modification of the law of a state is a prerogative of the legislature of the state and not within the province of this Court.

Therefore, this Court holds that Mason-Dixon or its workmen's compensation insurance carrier is subrogated to Moretz's recovery to the extent of the amount of workmen's compensation paid to Moretz.

### III.

Mason-Dixon's Motion to Dismiss.

In view of the Court's holding as hereinabove set forth, the Court is of the opinion that the motion of Mason-Dixon to be dismissed as a party to this proceeding should be granted, and an order will be entered accordingly.