## Staunton

### D.E. Roberts, Jr., and James L. Boone v. G. Marshall Mundy, Ancillary Administrator of the Estate of Clarence William Brooks, Deceased.

September 8, 1967.

Record No. 6458.

Present, All the Justices.

*Bradley Roberts (Joseph P. Johnson, Jr.; Warren & Warren*, on brief), for plaintiffs in error.

*Robert J. Rogers (James C. Turk; Woods, Rogers, Muse, Walker and Thornton; Dalton, Poff, Turk & Stone*, on brief), for defendants in error.

BUCHANAN, J., delivered the opinion of the court.

Clarence William Brooks was killed when the tractor-trailer being driven by him was struck from behind by a tractor-trailer owned by D. E. Roberts, Jr., and being driven by James L. Boone. The administrator of Brooks (plaintiff) brought this action for damages for his death against Roberts and Boone (defendants). A jury returned a verdict for the plaintiff for $35,000 on which the court entered judgment and the defendants appeal.[1] They contend, first, that the verdict was contrary to the evidence, primarily in that Brooks was guilty of contributory negligence as a matter of law.

The accident occurred on October 24, 1964, at approximately 7:45 p.m. on U. S. Highway 11, about one thousand feet east of where it passes under Interstate Route 81 a few miles east of the town of Christiansburg.

Highway 11 at that point was a three-lane road running east and west, each lane being about ten feet wide. The north lane for westbound traffic was separated from the other two lanes by solid double lines. The other two lanes were for eastbound traffic and separated from each other by a broken line, permitting passing. The highway curved slightly to the right for a short distance eastwardly after emerging from the underpass, and then was straight for four hundred to five hundred feet and slightly upgrade to the point of accident. The road was dry and the night was clear and dark.

Brooks, plaintiff's decedent, was operating a tractor-trailer unit loaded with cattle and proceeding east. Defendant Boone was also operating a tractor-trailer loaded with cattle, and was going east a short distance behind the Brooks vehicle. At the point of accident the Brooks vehicle had stopped in the south or right-hand lane, due to mechanical failure. While in that stopped position with its emer-

---

[1] Boone, driver of the Roberts vehicle, was injured in the collision and brought an action for damages against Brooks' administrator and the owner of the Brooks vehicle. It was heard along with the action of Brooks' administrator and the jury found a verdict for the defendants in that action.

gency brake on, the Boone vehicle crashed into it from behind and, as indicated by marks in the road, forced it eastwardly some fifty feet. Photographs taken that night and next day showed the type of the vehicles and their condition after the collision. The tractor of the Boone vehicle was forced back into its trailer, pinning the legs of its driver, Boone, in his cab and requiring the use of wreckers to release him. The body of Brooks was lying near the center of the south or right-hand lane with his legs under the wheels of the left front tandem of his trailer.

The Brooks unit was taken to a garage where Harris, a mechanic, examined it "to see what caused it to stop there in the highway," he said. He testified that he found the gearshift link had broken, which prevented the vehicle from being put in gear and rendered it incapable of moving. He had arrived at the scene of the accident a few minutes after it happened and the blinker lights on the vehicle were then operating.

Just as the accident happened, a mail carrier driving west toward Christiansburg in the north lane reached the scene. As he was meeting the Brooks vehicle he saw that its headlights were on. He first thought it was moving slowly, but when he got to it he realized it was stopped, and then "about the same instance I realized that it had been struck in the back end by another truck." At the time of the impact he was right beside the cab of the Brooks vehicle. There was then, he said, no traffic immediately in front of him or behind him. He drove ahead several feet to park his car and got back to the trucks before another car came along. He did not see the Boone vehicle until after it struck and he did not know whether its lights were burning, but no lights were burning on the front of it after it struck.

A State trooper arrived at the scene about ten minutes after the accident. He testified that flasher lights were burning on the front of the Brooks truck and at least one marker light, commonly called a corner light, was burning on the left rear side of the Brooks trailer. There were no lights at all on the Boone vehicle, which "had its nose buried up into the rear of the [Brooks] trailer." He identified and described the numerous photographs of the vehicles and of the road. The Boone vehicle left skid marks for a distance of thirty feet in the right-hand lane to a gouged-out place in the highway, and then skid marks continued on east for a distance of fifty-four feet to the rear of the Brooks trailer.

There were no flares or warning lights on the highway at the place

of collision and he found none in the cab of the Brooks tractor where they would normally be carried.

Defendant Boone, driver of the rear vehicle, testified that as he proceeded east beyond Christiansburg it was dark and his lights were on dim; that he was running from twenty-five to thirty miles an hour when he first saw the Brooks vehicle sixty to seventy feet in front of him; that there were no lights burning on the rear of it; that he thought the driver was having light trouble or something and maybe was trying to get out of the road to fix it; that he then let up on the accelerator and "started just gradually slowing down"; that he came on up closer and saw "the object of a man" under the trailer and realized he was broken down; that he did not know whether the vehicle was moving or stopped until he saw the man under the trailer; that he then applied all the brakes, which locked all of the wheels of the tractor and trailer, his load shifted and he could not control his vehicle.

After he realized the vehicle in front was stopped, he was then too close on it, he said, to go around it on either side. Asked on cross-examination if there was anything to keep him from seeing the Brooks vehicle sooner than he did, he replied that he did not know. He had testified two months previously in a discovery deposition that this was a two-lane road where the accident happened and he could not turn to either side because of an embankment and ditch on his right [not indicated by the photographs] and on his left was a solid double line and traffic was approaching.

From the evidence the jury could reasonably conclude that Boone failed to keep a proper lookout and to have his vehicle under proper control; that he failed to turn into the passing lane which was open to him, and was exceeding a reasonable speed under the existing conditions. The jury's finding that he was guilty of negligence which was a proximate cause of the accident is supported by the evidence. Cf. *Savage Truck Line* v. *Traylor*, 193 Va. 579, 69 S.E.2d 478; *Camp* v. *Bryant*, 171 Va. 390, 199 S.E. 469.

[1] If it be conceded, say the defendants, that Boone was negligent, yet the evidence convicts Brooks of contributory negligence which bars his recovery; this mainly because Brooks failed to put out flares as required by § 46.1-255 of the Code.[2] That section provides,

---

[2] "§ 46.1-255. Flares and other signals when vehicle disabled in highway after dark. —Whenever any bus, truck, trailer, house trailer or mobile home is disabled and stops upon any portion of the traveled portion of any highway in this State, except within the corporate limits of cities or upon streets or highways which are artificially

in substance, that where a truck or other named vehicle is disabled and stops on a highway, except in cities or on lighted highways, at a time when lights are required upon motor vehicles by § 46.1-268, the operator shall place on the roadway three red reflector flares or torches, one in each of the prescribed places.

In *Savage Truck Line* v. *Traylor, supra,* we said that this section is mandatory and requires that "as promptly as may be reasonably practicable," flares or torches shall be placed at the designated locations; and that the violation of it constitutes negligence, which, if it efficiently contributes to an injury, bars recovery by the wrongdoer.

At the request of defendants the court gave Instruction C, which informed the jury as to the requirements of Code § 46.1-255 and then told them that if they believed from a preponderance of the evidence that the Brooks truck became disabled and could not be moved by its driver, "and that said driver had sufficient time after such disability occurred" to place on the roadway three flares or torches in the manner required by the statute, but failed to do so, then he was guilty of negligence; and, the instruction continued, "if you further believe that any such negligence on the part of Clarence William Brooks was the *sole proximate cause* of the collision in question you shall find your verdict in favor of James L. Boone in the action in which he is plaintiff, and in favor of Boone and D. E. Roberts in the action in which they are defendants." [3] (Italics added.)

There was ample evidence to establish that the negligence of

___

lighted at night, at any time during which lights are required upon motor vehicles by § 46.1-268 the operator of such bus, truck, trailer, house trailer or mobile home shall place or cause to be placed on the roadway three red reflector flares or torches of a type approved by the Superintendent. One of the flares or torches shall be placed in the center of the lane of traffic occupied by the disabled bus, truck, trailer, house trailer or mobile home and not less than one hundred feet therefrom in the direction of traffic approaching in that lane, one not less than one hundred feet from such bus, truck, trailer, house trailer or mobile home in the opposite direction and one at the traffic side of such bus, truck, trailer, house trailer or mobile home not closer than ten feet from the front or rear thereof; provided, however, that if such bus, truck, trailer, house trailer or mobile home is disabled within five hundred feet of a curve or crest of a hill, or other obstruction to view, the flares or torches in that direction shall be so placed as to afford ample warning to other users of the highway, but in no case less than five hundred feet from the disabled vehicle."

[3] It was correct to say that the negligence, if any, of Brooks must have been the sole proximate cause of the accident with respect to the plaintiff Boone in his action against Brooks' administrator; but incorrect to say, as it impliedly does, that it must be the sole proximate cause of the accident with respect to Roberts and Boone in the action of Brooks' administrator against them. However, the instruction was given as stated at the request of the defendants, who cannot now be heard to complain about it.

Brooks, if any, was not the sole proximate cause of the collision. But aside from that, there was sufficient evidence to support a finding by the jury that there was not sufficient time between the breakdown of the Brooks vehicle and the collision for Brooks to have placed the flares required by the statute, and hence that Brooks did not violate the statute and was not guilty of negligence. Of course if he did not have time to place the flares, the fact that the trooper found none in the cab of his truck did not convict him of negligence.

The mechanic, Harris, testified, as stated, that when the linkage of a gearshift breaks, the vehicle is not able to move at all. The testimony of the mail carrier that he did not see the Boone vehicle approaching and that it struck the Brooks vehicle when he was about opposite the cab of that vehicle, could indicate to the jury that the Boone vehicle was not far behind when the Brooks vehicle stopped.

The mechanic testified that the Brooks vehicle had air brakes on it and if the pressure decreases to about sixty pounds the brakes come on automatically, and to get them off some adjustment underneath the truck is required. If Brooks was under his trailer just before the collision, as Boone testified, he was not thereby as a matter of law guilty of being negligent. *Elliott* v. *Lewis*, 207 Va. 361, 365, 150 S.E. 2d 129, 132.

We conclude that under the circumstances shown by the evidence in this case it was a jury question as to whether Brooks was guilty of negligence which was a contributing cause of the accident.

We find no reversible error in the instructions given at the instance of the plaintiff and to which defendants objected. It is necessary to discuss only the following:

[2] Instruction No. 3 told the jury that if they believed from a preponderance of the evidence that Boone immediately before or at the time of the collision was operating his truck in such way that he could not stop it after he saw, or in the exercise of reasonable care should have seen, the Brooks vehicle, then he was negligent. Boone testified that he did not know why he did not see the Brooks vehicle sooner than he did. After he saw it he did nothing to avoid it, but continued in the same lane when the passing lane was available to him, and he did not diminish his speed until he was too close to turn aside, according to his testimony. This situation was necessarily due to the way he was operating his truck, too fast or without looking or without having it under proper control. If the jury so believed from the evidence, then he was guilty of negligence and it was not

error to tell the jury so. The instruction was in the language of one given in *Twyman* v. *Adkins*, 168 Va. 456, 463, 191 S.E. 615, 618, after striking from it a statement that it was the duty of persons driving at night to operate their vehicles so they could stop in the range of their lights. The wording in the instruction corresponding to that in Instruction 3 was accepted without criticism. See Virginia Jury Instructions, § 26.12.

[3] Instruction No. 7 told the jury that even though they should find that Brooks was negligent, yet if they further found that such negligence was not a proximate or contributing cause of the collision, it did not bar recovery if they further believed from the preponderance of the evidence that Boone was negligent and that his negligence was the sole proximate cause of the collision. Defendants' objection to it was that it was in effect a "left-hand" last clear chance instruction and not applicable. We do not think so. It was a correct statement of the law and applicable under the evidence. See *Morris* v. *Dame's Ex'r*, 161 Va. 545, 564, 171 S.E. 662, 668.

[4] Defendants complain that Instruction No. 11 was confusing and misleading. It told the jury that there was a presumption that Brooks exercised ordinary care for his safety and that this presumption prevails in the absence of evidence to the contrary. We think it could not have been confusing or misleading under the facts of this case. In effect it stated that the burden was on the defendants to prove contributory negligence. Instruction No. 6 told the jury that contributory negligence was not presumed and the burden was on the defendants to prove it unless it was shown by the plaintiff's evidence or could fairly be inferred from all the circumstances of the case. This was a better and a sufficient statement of the principle involved, but under the circumstances of this case the giving of Instruction 11 was not reversible error.

[5] Defendants also complain of the court's refusal to give their proffered Instructions F and J. These would have presented the doctrine of sudden emergency, telling the jury that if Boone was confronted with a sudden emergency, not brought about by his own negligence, he should not be held to the same care and caution as would have been required except for the emergency. The court refused to give these instructions on the ground that there was no sudden emergency situation. We agree. These instructions were not appropriate under the evidence in the case.

The judgment below is affirmed.

*Affirmed.*