ROY D. TWA v. NORTHLAND GREYHOUND LINES, INC.[1]

November 12, 1937.

No. 31,327.

*Cobb, Hoke, Benson, Krause & Faegre* and *Frank Janes,* for appellant.

*Rolf Fosseen* and *C. E. Warner,* for respondent.

GALLAGHER, CHIEF JUSTICE.

Plaintiff had a verdict for damages to his automobile resulting from a collision with defendant's bus. The appeal is from an order denying defendant's motion for judgment notwithstanding the verdict or a new trial.

The collision occurred about eight o'clock on the night of January 4, 1936, about three miles north of Zimmerman on highway

[1]Reported in 275 N. W. 846.

No. 169.   At this point the highway lies north and south,. the pavement being 20 feet wide with ten-foot shoulders on each side.   The night was cloudy, dark, and cold, and the pavement somewhat icy and slippery.

Defendant's bus, while traveling south, stalled at about the place where the accident occurred.   Because of snow piled on the shoulder by the snowplow, it was necessary to leave the bus parked with a substantial part of it on the west traffic lane.   The passengers were taken to a near-by farmhouse to await the arrival of a relief bus. Upon its arrival, the relief bus pulled into a private driveway on the east side of the highway for the purpose of turning around.   It is disputed whether the relief bus attempted to turn around at a point 350 feet north of the disabled bus, as maintained by defendant, or at a point about 50 feet south of the disabled bus, as claimed by plaintiff.   In either event, the relief bus was crossways on the highway and facing east.   Here also there is conflict between plaintiff's testimony that it occupied the entire width of the pavement and the testimony of defendant's witnesses that it extended only across the east traffic lane.

Plaintiff was traveling south in the west lane of the pavement at 35 to 40 miles per hour.   He observed the taillights of the disabled bus when 100 to 150 feet from it but was unable to determine immediately whether it was moving or standing.   He reduced his speed about five miles per hour and, upon learning that the bus in the west lane was immobile, resorted to his deflected headlights instead of his driving headlights to procure a better view of the character of the highway and turned into the east lane of travel.   As he passed the disabled bus he observed the relief bus standing across the highway three or four car-lengths to the south.   He immediately applied the brakes, but because of the slippery condition of the highway was unable to stop his car in time to avoid a collision.   Defendant sought to show that the bus was driven part way into the driveway and was driven forward and back two or three times to effect the turning maneuver.   The driver then noticed an automobile approaching from the north and gave his flashlight to a passenger on the relief bus, who used it to flag the car down.   The first

car passed safely, but defendant contends that plaintiff approached at a speed of 45 to 50 miles per hour in the east or left lane and, heedless of the flashlight signals, failed to reduce his speed until he collided with the relief bus. The record does not disclose the exact time the relief bus was across the highway, but it is evident that some time was spent in getting the bus in position to make the turn, and it was at a standstill for a further time while the passenger with the flashlight went 50 or 75 feet north of the bus to flag traffic.

Two questions, whether defendant was negligent and whether plaintiff was contributorily negligent as a matter of law, are raised.

■ Defendant's negligence is the first question for consideration. It is charged in the complaint with negligently and unlawfully parking its buses on the pavement without lights and without placing flares as required by statute. It is conceded that there were no flares, but defendant contends that the relief bus was not parked in the highway within the meaning of 3 Mason Minn. St. 1936 Supp. § 2720-54½, and that because plaintiff saw the taillight of the disabled bus at a sufficient distance to avoid running into it the failure of the defendant to put out flares, as far as the disabled bus was concerned, in no way proximately contributed to the happening of the accident. Therefore, defendant argues, it was error for the court in its instructions to the jury to give the substance of the statute requiring buses parked on the highway in the nighttime to be flanked with flares.

With this reasoning we disagree. While plaintiff did discover the disabled bus in time to avoid running into it, it is very evident that its location on the highway was a contributing factor to the unfortunate events that followed. In the first place, as testified to by plaintiff, it was difficult to determine whether the disabled bus was standing or moving. That fact, no doubt, to some extent influenced the conduct of plaintiff with regard to his speed. Had the flares been placed as required by statute it would have been evident to plaintiff that the bus was at a standstill and would have impressed him with the fact that something had occurred at its location. This should have affected plaintiff's judgment in the matter of speed,

particularly with the pavement in the icy and slippery condition described in the testimony. There is to be taken into consideration the further fact that if a material part of the disabled bus was left standing in the west traffic lane his view of obstacles located south of the bus would be interfered with, as plaintiff testified.

What has been said with reference to the placing of flares to warn travelers as to the location of the disabled bus is sufficient to justify the instruction given by the court, but we do not wish to leave the impression that merely because the relief bus was brought to a halt in the highway to effect a proper traffic operation compliance with the flare statute might not be required under some circumstances. If the relief bus was at a halt for a longer time than was reasonably necessary to accomplish its turning maneuver, it would cease to be operated in traffic and would be parked within meaning of the flare statute. Hartwell v. Progressive Transportation Co. Inc. 198 Minn. 488, 270 N. W. 570; Village of Wonewoc v. Taubert, 203 Wis. 73, 233 N. W. 755; 72 A. L. R. 224; Webster's New International Dictionary (2 ed.) 1935, definitions of "park" and "parked." While the evidence is somewhat indefinite as to just how long the relief bus was permitted to stand in the location in which it was at the time of the collision, we do not believe that the facts in this case are such that we could say as a matter of law that the jury was not justified in finding that the relief bus was left standing upon the highway such a length of time as to constitute parking within the meaning of the statute.

Regardless of the statute, the defendant was required to use ordinary care commensurate with the risks involved. Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Brown v. Murphy T. & S. Co. 190 Minn. 81, 251 N. W. 5. In view of the hazard defendant created by blocking the highway with the relief bus, in the immediate vicinity of the place where the disabled bus partially obstructed the pavement, in such a manner that the lights of the relief bus afforded no warning of its presence since they fronted east, were far off the pavement, and were unlikely to be seen by drivers approaching from the north, a finding of negligence on defendant's part was justified if not compelled.

The disabled bus was left on the highway for some considerable time with ample opportunity for the driver not only to place flares but to resort to such other safety measures as the occasion required. No error was committed in submitting to the jury the statute complained of.

■ Plaintiff testified that while he was in the west lane of travel the disabled bus blocked illumination of the road ahead. When he discovered it was at rest he turned into the center of the road, at the same time switching from driving to courtesy lights. According to the testimony, these lights would disclose a substantial object the size of a man 100 feet ahead of the car. It follows that the relief bus must have been within their illumination range almost from the moment he turned into the center of the highway.

It is contended that he violated 1 Mason Minn. St. 1927, § 2720-50, which requires a motorist at night to have headlights having an illumination range of 200 feet except when meeting another vehicle, when deflected lights of a range of 75 feet may be used, and that plaintiff was negligent in driving at such speed that he could not stop within the illuminating range of his headlights at the time of the accident.

It has been held that where there are no distracting circumstances excusing the timely discovery of an obstacle in the highway or where a motorist is driving at such speed that he cannot stop within the range of illumination of his headlights upon making timely discovery, he is contributorily negligent as a matter of law. Orrvar v. Morgan, 189 Minn. 306, 249 N. W. 42; Hartwell v. Progressive Transportation Co. Inc. 198 Minn. 488, 270 N. W. 570; Forster v. Consumers W. S. Co. 174 Minn. 105, 218 N. W. 249. Where there are distracting circumstances, however, the question of a motorist's contributory negligence in failing to make timely discovery is one for the trier of fact. Forster v. Consumers W. S. Co. supra; Wicker v. North States Const. Co. Inc. 183 Minn. 79, 235 N. W. 630; Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; Brown v. Raymond Bros. M. T. Inc. 186 Minn. 321, 243 N. W. 112; Adamek v. Tilford, 125 Neb. 139, 249 N. W. 300; Morehouse v. Everett, 141 Wash. 399, 252 P. 157, 58 A. L. R. 1482. A vehicle

parked by the roadside, to avoid which a motorist must alter his course, has been held to be such a circumstance. Tully v. Flour City C. & O. Co. 191 Minn. 84, 253 N. W. 22. It is not proved that plaintiff could not stop within the range of illumination of his headlights, but merely that he failed to make timely discovery of the relief bus. Whether or not he was contributorily negligent, in consequence, was for the jury. To hold that a motorist is under an imperative duty to discover at his peril and at all events every substantial obstruction to travel within the range of illumination of his headlights would constitute an avoidance of the penalties of the highway traffic act imposed on those who violate its provisions. Mechler v. McMahon, 184 Minn. 476, 239 N. W. 605; see Hart v. Stence, 219 Iowa, 55, 257 N. W. 434, 97 A. L. R. 535.

Order affirmed.