MILES, Administratrix, Plaintiff, vs. GENERAL CASUALTY COMPANY OF WISCONSIN and others, Defendants. [Four appeals.]

*January 19—February 15, 1949.*

280

*Willis E. Donley* of Menomonie, for the plaintiff.

*E. B. Bundy* of Eau Claire, for the defendants General Casualty Company of Wisconsin and Anton Polzer.

For the defendants American Automobile Insurance Company, Goodrich Lumber & Coal Company, and Richard Polzer, there was a brief by *Ramsdell & King* and *George M. Carroll,* all of Eau Claire, and *John C. Roberts* of Augusta, and oral argument by *Mr. Bailey E. Ramsdell, Mr. Carroll,* and *Mr. Roberts.*

ROSENBERRY, C. J. The principal facts which the jury might find from the evidence may be stated briefly as follows:

On November 3, 1945, Richard Polzer was driving a Goodrich Lumber & Coal Company truck east toward the city of Durand after having delivered a load of coal to a schoolhouse to the west. He was on a straight and fairly level stretch of United States Highway 10, a short distance west of Durand. It was about six p.m., and dark. His truck lights went out suddenly and before he could bring the truck to a stop it traveled about three hundred feet along the highway, knocking down two or three highway guard posts on the north or left side of the road, and came to rest on the north side nearly parallel with the line of travel, facing east. At the point where the truck stopped, the black-top highway was twenty-three feet four inches wide. The distance from the edge of the black-top paving to the highway guard posts was two feet eight inches. The front axle of the truck was against one of the guard posts. There is a dispute as to the exact position of the truck with reference to the black-top. There is evidence

from which a jury could find that the right or south wheels of the truck were on the black-top. There is other evidence which contradicts this. From the verdict of the jury it appears that the jury found that it was at least on the shoulder. At the place where the truck stopped there was quite a sharp dip into a ditch but the truck was not in the ditch. Mr. Schlosser passed the truck and endeavored to pull it out on to the highway but could not, and abandoned the effort.

Richard Polzer, without placing any flares, fusees, or lanterns as required by sec. 85.06 (2) (d), Stats., rode to Durand with Mr. Schlosser and reported the situation to his employer and did not return to the scene of the accident. The defendant Goodrich Lumber & Coal Company, hereinafter referred to as the "Goodrich Company," arranged with the defendant Anton Polzer to pull the truck out upon the highway. Before Anton Polzer left Durand he informed Traffic Officer Starre Miles of the accident, whereupon Miles passed Polzer while Polzer was on the way to the accident, drove about sixty feet to the west of the Goodrich Company truck and parked his car on the north side of the highway facing west. His wife, who was with him, remained in the car.

The Miles car had upon its rear a large red blinker light which flashed on and off and which was left lighted and operating. Miles had a red reflector with him which was found after the accident on the south half of the pavement about opposite the truck. He also had a flashlight with which he flagged one traveler passing to the west. This traveler, Mr. Pomsal, testified that he saw the lights on the wrecker showing out across the swamp to the northward and that he noticed the big blinker light on the back of the Miles car for quite a ways. Anton Polzer turned his car around and backed it into position so that a chain could be fastened from the wrecker to the front of the Goodrich Company truck. Polzer did not leave the driver's seat in the wrecker and was looking back through the back window of the wrecker to receive signals

from Hudson, who was fastening the chain to the Goodrich truck.

The wrecker at that time was well to the north side of the highway, the front about four feet on the highway, and was facing east, perhaps at a slight angle to the southeast. While Hudson was engaged in the act of hooking the chain onto the Goodrich Company truck the defendant Howard Kern, traveling west and apparently maintaining no lookout, as the jury found, struck the front right corner of the wrecker with the right front corner of his car. The blow drove the wrecker back toward the Goodrich truck; knocked Hudson into the ditch; swung the wrecker about three quarters of the way around and passed on to the west. The exact place where the deceased Miles stood was not fixed by the evidence. His wife saw his body in the air, and at the same time saw a single flash of light. His body was found about sixty feet to the west of the wrecker and near the place where his car was standing. When found he was unconscious and he died without regaining consciousness.

The first contention made by the Goodrich Company is that under the provisions of sec. 85.06 (2) (d), Stats. 1945, Richard Polzer was under no duty to place fusees, flares, or electric lanterns in accordance with the terms of the statute.

Sec. 85.06 (2) (d), Stats., provides:

"No person shall, during any period of time from one-half hour after sunset to one-half hour before sunrise, permit a motor truck, truck tractor, trailer or semitrailer, to stand upon any traveled portion of a highway outside of the corporate limits of any incorporated city or village, unless such vehicle is protected by a burning fusee or flare placed on the extreme left side of the vehicle, and by lights placed approximately one hundred twenty-five feet to the front and rear of the vehicle, to clearly indicate the presence of such vehicle."

The Goodrich Company contends that there is a conflict between the motor vehicle department order (No. 205), and

the statute and that the statute controls.  · It is considered that there is no conflict between the statute and the order for the reasons stated in *Meier v. Smith, ante,* p. 70, 35 N. W. (2d) 452, decided December 15, 1948, why there was no conflict between the federal and state statutes under consideration in that case.    That the order of the motor vehicle department has the force and effect of law, see secs. 110.03 and 194.02, Stats.    Goodrich Company's contention cannot be sustained, as under the facts the statute and rule apply.

The second proposition advanced by the Goodrich Company is that the failure of its employee Richard Polzer to place flares in accordance with the statute and the order of the motor vehicle department was not a cause of the accident; that the position of the truck had no effect in producing the accident and that the absence of the flares likewise had no causal effect. Citing *Schultz v. Brogan,* 251 Wis. 390, 29 N. W. (2d) 719. In that case it appears that the Wiedmeyer car ran off the road into the ditch on the north or left side of the road.    Shortly thereafter the defendant Marx, also driving east, saw the situation, stopped, attached a cable to the front of Wiedmeyer's car and pulled him back onto the right or south side of the highway.    After this operation both cars came to a stop on the south or right-hand side of the road facing east, Wiedmeyer's car being behind the Marx car which had pulled it out. There was evidence that the Marx car was on the concrete to the extent of four feet which left less than fifteen feet of the roadway for other traffic.

Brogan, the defendant, was also driving east on the same highway.    He first saw the Wiedmeyer car when he was some four hundred feet east, but at that time could not determine whether all of it was on the concrete or not.    As he approached the Wiedmeyer car he applied his brakes to slow down with the intention of going by, but he claims to have noticed people standing in the north lane opposite the cars and he then applied his brakes with full force.    The rear portion of his car there-

upon slewed to the south and struck the left rear fender of the Wiedmeyer car.

Plaintiffs, who were at a tavern at the intersection, saw the ditched car and walked eastward toward it. At the time the Wiedmeyer car was struck plaintiffs were behind the car and were struck by the Brogan car either just before or at about the same time that it hit the Wiedmeyer car. No question was raised as to Brogan's negligence.

The jury exonerated both Wiedmeyer and Marx from the charge of parking, stopping, or leaving standing their automobiles upon the highway when it was practical to park, stop, or leave such vehicles standing off the roadway of the highway. Each, however, was found guilty of parking his automobile on the highway without leaving a clear and unobstructed width of at least fifteen feet upon the roadway of the highway opposite his car.

The jury also found that the negligence of Wiedmeyer, who owned the towed car, was a cause of plaintiffs' injuries. Wiedmeyer contended that under the facts of the case the leaving of his car so as to have less than fifteen feet of roadway to the left was not the cause of the plaintiffs' injuries. Judgment was rendered against the defendants. On appeal it was held whether the fact that the cars were parked so as to leave less than fifteen feet clearance had no substantial effect in causing the accident. It was pointed out that the Brogan car would have struck the plaintiffs whether the Wiedmeyer car was there or not, and injuries were not in any physical sense the result of a collision between the two cars. That case is clearly distinguishable from this case. No one can say with reasonable certainty what the end result would have been if Richard Polzer had complied with the law. An automobile driver can run over flares and lanterns, but they make what the legislature deems to be an ample warning of danger.

Richard Polzer had no fusees, flares, or electric lanterns with him, as the statute and order require. While it is true

that the Kern car did not strike the Goodrich Company truck, the fact that the Goodrich truck was disabled and partly on the roadway and partly off, created a situation which was hazardous to passing cars. It was the duty of the Goodrich Company to remove the disabled truck as soon as reasonably possible. This it attempted to do by employing Anton Polzer to pull the truck from the place where it was located, either on the roadway or partly on the roadway and partly on the shoulder.

The contention of the Goodrich Company in this case is based principally upon the premise that the requirement that lights be placed when a disabled car is left standing upon the roadway or shoulder, is to protect the disabled vehicle, for if that is not the basis then no penalty could be imposed for an infraction of the statute or rule if the disabled vehicle was not injured. It is considered that this is too narrow a construction of the statute, having in mind what was sought to be accomplished by it.

In recent years many disastrous accidents have occurred on the highways due to standing vehicles, particularly trucks left without warning lights. Such an obstacle on or partly on a highway creates a situation that is a hazard, particularly at night. Ordinarily it is the duty of the driver of the disabled vehicle to remove the obstacle from the highway within a reasonable time. As is well known, conduct of this operation requires protection just as much as does the truck, and the lights are intended to protect not only the disabled truck but to make other automobile drivers aware of the entire situation and of the dangers incident to it, including operations undertaken to remove the disabled truck from the highway.

While it is true, as contended by the Goodrich Company, that the principal cause of the accident was the heedless and reckless driving of Kern, it was clearly a question for the jury under the circumstances of this case to determine whether the absence of the lights was a substantial cause of the end result. Being a jury question it was one which the jury might decide

either way.   If the purpose of the statute was to disclose to approaching drivers the fact that a dangerous and hazardous situation existed, and by reason of the failure to comply with the statute the collision occurred, it is considered that the chain of causation was complete although the Kern car did not actually strike the Goodrich Company truck.

It is to be noted that as soon as possible, under the provisions of the motor vehicle department order, three lighted flares or red electric lanterns shall be placed on the roadway as follows: (a) One in the center of the lane of traffic occupied by such vehicle and not less than fifty paces distant therefrom in the direction of traffic approaching in that lane; (b) one not less than fifty paces from such vehicle in the opposite direction; and (c) one at the traffic side of such vehicle approximately ten feet rearward or forward thereof.   The lights forward and to the rear would be some two hundred fifty feet or eighty-three yards apart, which would give an approaching traveler ample notice to enable him to avoid the risk of injury.

While the headlights of the wrecker were lighted and the wrecker was facing partly in the direction from which Kern came (the east) the wrecker was at the point of danger, while the fusees, if put out as required by statute and rule, would have been one hundred twenty-five feet to the east and west of the wrecker and opposite it.   Both the position of the fusees or lanterns and the color of the lights would have warned any observant traveler that there was danger ahead.

The wrecker was not required either under the statute or the rule to put out fusees, because it was not "standing" within the meaning of the statute or order.

Anton Polzer testified, and his testimony is uncontradicted, "I made a complete turn and had backed up before the impact. We were standing still when we were hit.   I don't know how long.   I would say maybe a minute or two."

To require flares to be put out as required by statute and order, while a truck was actively engaged in a wrecking operation would be unreasonable.   Moving about constantly it

would be impossible for a truck driver to comply with the statute. Both the statute and the rule were clearly intended to apply to a vehicle that has come to rest, and not to a truck which in the course of moving the obstacle from the highway, stops a moment or two to attach a chain to a disabled truck.

Upon the plaintiff's appeal from that part of the judgment which dismissed the plaintiff's complaint as against Anton Polzer and his insurance carrier, the General Casualty Company of Wisconsin, it appears from examination of the record that the plaintiff served her notice of appeal on none of the parties except E. B. Bundy, attorney for the General Casualty Company of Wisconsin, and Robert Pfiffner, attorney for Anton Polzer. Because of the plaintiff's failure to serve upon the other parties who are bound with her by the judgment, namely, Richard Polzer, the General Casualty Company, Goodrich Lumber & Coal Company, and Howard Kern, no jurisdiction was conferred upon this court, and for that reason plaintiff's appeal must be dismissed. *Stevens v. Jacobs, 226* Wis. 198, 275 N. W. 555, 276 N. W. 638.

When plaintiff appealed she became an "appellant" and sec. 274.11 (1), Stats., applied to her as if she were the original appellant.

*By the Court.*—On the appeal of Richard Polzer, the Goodrich Lumber & Coal Company, and the American Automobile Insurance Company, the judgment is affirmed. On the appeal of the plaintiff from the judgment against her in favor of Anton Polzer and the General Casualty Company of Wisconsin, the appeal is dismissed.

Wickhem, J. (*dissenting*). I concede that both sections 85.06 (2) (d), Stats., and motor vehicle department order 205, establish a safety rule in respect of flares to be set out in case a truck is left standing upon any traveled portion of a highway outside the corporate limits of a city or village. I do not consider, however, that the failure of the driver of

the Goodrich truck to set flares was a cause of the death of plaintiff's intestate. In *Wilmet v. Chicago & N. W. R. Co.* 233 Wis. 335, 345, 289 N. W. 815, this court said:

"Violation of a regulatory statute by one upon whom a duty is imposed, although the violation may be an act of negligence, does not give rise to a cause of action for an invasion of an interest of another unless the interest invaded is one which the enactment is intended to protect."

See also on this point Restatement, 2 Torts, p. 752, sec. 286. It is plain to me that the purpose of the statute and the safety order is to protect the traveling public against running into the parked vehicle. In this case nobody ran into the Goodrich truck and it seems to me impossible to say that the failure to put out flares is a factor in this accident. The negligent operation of his car by Kern plus the presence of the wrecker on the highway were two factual causes of the accident. Since the court has held that plaintiff has not preserved his rights as to the wrecker operated by Polzer I shall not pursue the inquiry into Polzer's negligence or its causal relation to the accident and simply express the view that defendant Goodrich was not, by the mere failure to put out flares, responsible for the presence of the wrecker or the manner of its operation and conclude that the case is governed on cause by *Schultz v. Brogan,* 251 Wis. 390, 29 N. W. (2d) 719, and by *Johnson v. Armitage,* 253 Wis. 300, 34 N. W. (2d) 118.

I am authorized to state that Mr. Justice Hughes concurs in this opinion.