GEORGE RAY BUNCH, appellant, v. JAMES CLEMANT HANSON, appellee.

No. 49924.

(Reported in 104 N.W.2d 581)

1098

AUGUST 2, 1960.

Messer, Hamilton & Cahill and L. G. Klein, all of Iowa City, for appellant.

Hart, Shulman, Phelan, Tucker & Ivie, of Iowa City, for appellee.

GARFIELD, J.—This is a law action to recover for personal injuries sustained when defendant's automobile struck plaintiff while he was standing or walking at the side of his tractor-trailer on paved U. S. Highway 218 about 10 p.m. on February 1, 1956. Trial resulted in judgment on jury verdict for defendant from which plaintiff has appealed.

Plaintiff assigns error in the giving of jury instructions

10-A and 11-A on the asserted ground there was no basis in the evidence for them. Also in the failure to submit some specifications of negligence it is claimed had support in the evidence.

Plaintiff was making his first trip as extra driver for a truck company in Dallas, Texas, traveling south from Fairmont, Minnesota, to Memphis, Tennessee, with a gross weight of about 24 tons. The highway was covered with snow and ice and was slippery. It was snowing and visibility was not the best. When plaintiff was ascending a hill about 12 miles north of Iowa City the drive wheels of the truck started to spin and lost traction. Plaintiff testifies he pulled the truck to the right so about the right half of it was on the shoulder and the other half on the pavement. He did this partly to get traction and partly to get out of the way of traffic. He stopped the "semi" in this position and with the aid of his spotlight located a sand barrel on the east (his left) side of the highway.

Plaintiff dug from the barrel the snow that covered the sand and with a shovel threw sand in front of the truck and under the drive wheels—about 50 feet of roadway in all. About five minutes after the truck stopped he awakened the other driver who took the steering wheel. Plaintiff then got another shovel full of sand and threw it under the drive wheels. With still another shovel full for use if the drive wheels started to spin again, plaintiff testifies he faced the truck and walked at its side as it began to move. While all this was going on two northbound cars passed the truck. The third car going north was defendant's and it struck and seriously injured plaintiff.

Other evidence will be later referred to.

I. Instruction 10-A to the jury states it is the law that whenever a truck is stopped upon or immediately adjacent to the main traveled portion of a highway at night the driver shall cause a lighted fusee to be immediately placed on the roadway at the traffic side of such vehicle; if the jury finds plaintiff's truck was so stopped and he failed to cause a lighted fusee to be immediately placed on the roadway at the traffic side of such vehicle this would constitute negligence upon plaintiff's part and if the jury further finds such negligence, if any, contributed to his injury he would not be entitled to recover.

The instruction defines "immediately" in language not challenged and concludes with the statement that if plaintiff, following the stalling of the truck, failed to act with reasonable diligence under all the circumstances he would not be obeying the statute but if plaintiff, in failing to place a fusee upon the pavement immediately after his truck stopped, acted as an ordinarily careful and prudent person under the circumstances he would not be contributorily negligent in this respect.

Plaintiff objects to this instruction on two grounds. First, it is said the statute to which it refers is without application to the evidence. Second, that compliance with the statute would not have given defendant additional notice. Principal argument in support of the first ground is the assertion it is without serious dispute that at the time of the accident the truck was moving. In support of the second ground it is said the only purpose of placing fusees is to give notice of the presence of the truck and defendant had such knowledge anyway. There is no complaint against the form of the instruction or that it does not correctly state the law.

The statute to which instruction 10-A obviously refers is section 321.448, Code, 1958. It provides that whenever a truck is stopped upon or immediately adjacent to the traveled portion of a highway outside a business or residence district at night the driver, in addition to the requirements of section 321.395 as to lights upon the vehicle, shall cause a lighted fusee to be immediately placed on the roadway at the traffic side of the vehicle and, as soon thereafter as possible, three lighted fusees, flares or red reflectors, one at least 100 feet in advance of the vehicle, one at least 100 feet to its rear, and the third upon the traffic side of the vehicle. The statute also provides that if the vehicle is stopped within 300 feet of a curve or crest of a hill the flare or reflector in that direction shall be so placed as to afford ample warning to other users of the highway.

Incidentally we may observe that if an instruction embodying section 321.448 is applicable to the evidence, 10-A is quite favorable to plaintiff. The instruction refers only to the statutory duty to place a lighted fusee at the traffic side of the vehicle and ignores the duty to place three other warning lights

(fusees, flares or red reflectors) in front, rear and at the traffic side of the vehicle respectively. Further, there is substantial evidence the truck was stopped within 300 feet of a curve in the highway and the crest of a hill. Plaintiff himself testifies the truck was around 300 feet below the top of the hill and within 60 feet below a curve in the roadway. Other testimony places the truck even closer to the crest of the hill. Instruction 10-A also ignores the duty under such circumstances to place the forward flare or reflector so as to afford ample warning to other highway users.

The instruction is also favorable to plaintiff in leaving it to the jury to determine whether the one fusee to which it refers was immediately placed on the roadway at the traffic side of the vehicle. Since the undisputed evidence is that no fusees or flares were placed, the jury could have been properly so informed.

Three witnesses testify as to whether the truck was moving or stationary when the accident occurred—plaintiff, defendant and Gary Verwers, one of two other college students riding with defendant. Plaintiff says the truck was moving and moved about 20 feet between the time he "spun out" and the time he was struck by defendant. This is part of the cross-examination of plaintiff:

"I don't imagine it was moving fast enough to move the speedometer on it. Q. Would you be able to tell it was moving if you were coming from the opposite direction? A. I don't know whether you could or not. Q. It would be pretty hard to tell wouldn't it? A. I don't believe a man could tell whether it was moving."

On his direct examination Verwers testifies five times the truck was stopped. On cross-examination he says he was under the impression it was stopped.

This is the direct examination of defendant upon this point:

"Q. Do you recall or what is your impression as to whether the truck was moving or standing still when you met and passed in the opposite direction? A. It is very difficult to tell. If it was moving, it was moving very slowly. It appeared to be standing still.

"Q. You had no impression of motion to it at all? A. No. * * *.

"Q. You stated that when you saw this truck to your general impression it was not moving? A. That is true.

"Q. Did that impression change as you got closer to the truck and passed it? A. No."

These are the pertinent excerpts from the cross-examination of defendant on this subject. (This also bears on the second ground of plaintiff's objection to instruction 10-A.)

"Q. As soon as you came around the curve where you could see down the hill you saw the headlights, recognized it was a truck, and that it was stopped? A. I did not recognize the truck was stopped at that time.

"Q. When did you recognize the truck was stopped? A. I don't believe I ever said I recognized that the truck was stopped. Apparently it was moving slowly or was stopped. * * * When you are approaching a vehicle it is extremely difficult to tell how fast it is moving or whether it is moving at all.

"Q. I am simply asking you to tell us whether you recognized that the truck was moving or stopped? A. Apparently it was moving slowly.

"Q. From the time you first saw the truck you now say it appeared to be moving slowly? A. There was no indication the truck was in trouble, if that is what you are trying to establish. * * * Apparently I thought the movements of the truck were normal.

"Q. So far as you could tell you want the jury to understand that after you came around the curve and saw the truck * * * you felt it was operating in a normal fashion? A. That is correct."

██ Plaintiff admits the truck was stopped partly upon and partly immediately adjacent to the traveled portion of the highway for several minutes shortly before the accident and that no fusee or other warning light was placed upon or adjacent to the roadway at any time. Thus there is clear evidence of a violation of section 321.448 shortly before the accident. However, according to plaintiff the truck moved about 20 feet before he was struck and was moving slowly at the time, al-

though he did not think a northbound motorist could tell it was moving.

There is room for argument that even under plaintiff's testimony the truck was stopped, in the practical and realistic sense, at the time he was struck and the need for warning lights was clear. See as somewhat in point Olson v. Neubauer, 211 Minn. 218, 300 N.W. 613, 614, 615. But such a holding is not necessary. There is substantial evidence the truck was not moving at the time of the accident. Verwers so testifies throughout. Defendant so testifies on direct examination. While his cross-examination may have weakened his direct examination on this point it did not destroy it nor the positive testimony of Verwers who was disinterested so far as shown.

In Snittjer Grain Co. v. Koch, 246 Iowa 1118, 1127, 1128, 71 N.W.2d 29, 34, the cross-examination of plaintiff conflicted with his direct examination and the testimony of his next most important witness more than the cross-examination of this defendant. On the strength of Snittjer's cross-examination the trial court directed a verdict against him. We held the cross-examination merely created a conflict in the evidence for the jury to resolve and reversed the judgment. The opinion quotes this as the correct test: " 'Unless it amounts to such a stipulation or waiver as to have the force of a judicial admission, the testimony of a party to a fact is ordinarily no more conclusive upon him than the evidence given by any other witness; and it is the duty of the court or jury to determine the fact, not alone from the testimony given by the party but from all the evidence in the case.' "

After careful consideration of our earlier precedents and other authorities the Snittjer opinion concludes: "Mere testimony of a party on cross-examination, unfavorable to his own cause and in contradiction of other evidence in his favor, is not ordinarily conclusive. Unless it be of such a nature or under such circumstances as to permit the court to classify it as a 'judicial admission' it merely creates a conflict in the evidence to be resolved as a question of fact."

The cited decision is followed and the language last quoted is repeated in Carter v. Chicago, R. I. & P. R. Co., 247 Iowa

429, 436, 74 N.W.2d 356, 360, and Krieg v. Grant, 248 Iowa 396, 400, 80 N.W.2d 724, 726.

It is clear the cross-examination of this defendant falls short of a judicial admission the truck was moving at the time of the accident. It was evidently designed to show whether defendant thought the truck was moving as he approached it, not so much what the actual fact as to its moving was. Testimony that defendant thought the truck was moving as he approached it on this dark, snowy night does not necessarily prove it was in fact moving. Plaintiff's objection to instruction 10-A cannot be sustained on the first asserted ground.

II. Nor are we justified in holding instruction 10-A constitutes reversible error upon the second ground urged. It cannot be said as a matter of law that failure to place a lighted fusee did not contribute to the cause of the accident and hence was immaterial, or that presence of the fusee would not have given defendant additional notice or warning.

It is true defendant saw the lights of the truck as he came over the crest of the hill. However, the conclusion is warranted there was then no indication the truck was in trouble and defendant thought it was operating in normal fashion. Plaintiff himself testifies, as stated, he did not think a northbound motorist could tell whether it was moving. A lighted fusee would have given defendant notice sooner than he became aware of the fact that the truck was in trouble and danger lay ahead, and would have afforded him more time and a better opportunity to avoid the accident. The legislature has required the placing of lighted fusees as a precautionary measure in addition to the warning from lights upon a truck that is stopped at night. Violation of the statute should not be regarded as immaterial unless it is the only reasonable conclusion to be drawn from the evidence.

See in support of the views just stated C. W. Zaring & Co. v. Dennis, 155 Fla. 150, 19 So.2d 701, 704; Reid-Elliott Motors v. Lee, La. App., 94 So.2d 160; Twa v. Northland Greyhound Lines, 201 Minn. 234, 275 N.W. 846; Anderson v. Johnson, 208 Minn. 373, 294 N.W. 224; Savage Truck Line v. Traylor, 193 Va. 579, 69 S.E.2d 478; Miles v. General Casualty Co.,

254 Wis. 278, 36 N.W.2d 66. Annotations on failure to set out flares to warn of vehicles stopped on or adjacent to the highway appear in 111 A. L. R. 1516; 67 A. L. R.2d 12.

██ ██ We cannot accept plaintiff's argument that failure to place a lighted fusee at the traffic side of the truck did not contribute to the cause of the accident because defendant did not strike the truck. The statute requiring the placing of warning lights was designed not merely to protect the stalled truck and prevent motorists from colliding with it but to warn of the dangers incident to the situation. The question is not whether defendant collided with the truck but whether violation of section 321.448 contributed to the cause of the accident. Such an argument as plaintiff makes was rejected in Twa v. Northland Greyhound Lines and Miles v. General Casualty Co., both supra.

This from the Miles case applies here (page 286 of 254 Wis., page 70 of 36 N.W.2d): "It is considered that this is too narrow a construction of the statute, having in mind what was sought to be accomplished by it.

"In recent years many disastrous accidents have occurred on the highways due to standing vehicles, particularly trucks left without warning lights. Such an obstacle on or partly on a highway creates a situation that is a hazard, particularly at night. Ordinarily it is the duty of the driver of the disabled vehicle to remove the obstacle from the highway within a reasonable time. As is well known, conduct of this operation requires protection just as much as does the truck, and the lights are intended to protect not only the disabled truck but to make other automobile drivers aware of the entire situation and of the dangers incident to it, *including operations undertaken to remove the disabled trucks from the highway.*" (Emphasis added.)

Engle v. Nelson, 220 Iowa 771, 263 N.W. 505, is the principal authority cited for the contention instruction 10-A was reversible error. It differs from the present case in several respects. 1) The contention there was that plaintiff's decedent was contributorily negligent as a matter of law for alleged violation of the statute requiring flares to be set out, not that

an instruction with reference to it was reversible error. 2) The statute, applying to "trucks and combinations thereof," did not apply to the vehicle there involved. "The service car was not a truck or a combination thereof. It was a Cadillac touring car with the rear part of the body removed and a wrecking crane installed therein" (page 775 of 220 Iowa). 3) A friend of Engle's decedent was waving a flashlight some 150 or 200 feet from the stalled automobile and service car in the direction from which, and at the time, defendant approached. "* * * it might well be said that the use of the flashlight * * * would be a sufficient compliance with the statute in question" (page 775). 4) "Under the appellant's [defendant's] own testimony * * *, he saw the standing cars *when he was 1200 or 1400 feet away from them, and knew that they were * * * in his path, and * * * stationary*. Under these circumstances, the presence of a 'flare' or any other signal would have given him no more notice and no more knowledge than he had by actually seeing the stationary cars in front of him." (Emphasis added.) (Page 777)

There is no such testimony here as that just referred to in Engle v. Nelson, supra. The only other authority plaintiff cites is Tracy v. Rublein, 342 Mich. 623, 70 N.W.2d 819. The views of a single dissenting judge there may be favorable to plaintiff. The court's opinion is not.

It is apparent the experienced trial court considered with unusual care the propriety of instruction 10-A and concluded it should be given. We are not persuaded it was reversible error upon either ground urged by plaintiff.

III. Instruction 11-A deals with plaintiff's charge defendant was negligent in driving at a speed greater than would permit him to stop within the assured clear distance ahead, in violation of Code section 321.285. The instruction states a violation of this provision would be negligence unless the evidence shows a legal excuse therefor, and if defendant was confronted by an emergency not of his own making and by reason thereof failed to obey the statute there would be such an excuse. Basic pattern for the instruction is Kisling v. Thierman, 214 Iowa 911, 916, 243 N.W. 552, and the many precedents that follow it. Plaintiff objects to instruction 11-A on the asserted ground

there is no evidence of an emergency not of defendant's making.

Harris v. Clark, 251 Iowa 807, 810, 103 N.W.2d 215, 217, fully considers a like question. There defendant collided with the rear end of plaintiff's car in daylight as it stopped suddenly to allow a preceding motorist to turn into a driveway. We approved giving an instruction similar to 11-A on the question whether defendant was confronted with an emergency not of his own making. One definition of emergency Harris v. Clark approves is "a sudden or unexpected occasion for action." Precedents are there cited for the holding that evidence of a driver's negligence does not render an instruction on emergency improper. Numerous decisions are also cited for the proposition that the questions whether an emergency existed and a person was without fault in bringing it about are ordinarily for the jury.

We think there is substantial evidence which justifies the giving of instruction 11-A. As previously stated, the pavement was snow-packed and slippery, it was snowing and visibility was not good. Defendant was not aware of the truck's presence until he came over the crest of the hill about 300 feet away and his lights were not focused on the east traffic lane (his own) until he emerged from the curve only about 60 feet away. There is testimony lights of the truck prevented defendant from seeing behind them until he was nearly even with them. According to defendant and his two passengers plaintiff suddenly became visible in the center of defendant's lane where the collision occurred "a split second" later. Defendant had no warning of plaintiff's presence there. The finding is warranted that when defendant became aware of plaintiff's presence it was too late to avoid striking him.

Defendant testifies, "When I first saw Mr. Bunch I was in the neighborhood of 15 to 20 feet from the truck and 30 to 50 feet from him." Verwers says it appeared to him plaintiff had come from behind the truck. Plaintiff testifies it was only about two seconds after he first saw defendant's car until he was struck.

Harris v. Clark, supra, 251 Iowa 807, 103 N.W.2d 215, and citations, support our holding in this division. See also Central

States Elec. Co. v. McVay, 232 Iowa 469, 474, 5 N.W.2d 817, 820; Schroeder v. Kindschuh, 229 Iowa 590, 294 N.W. 784; Babendure v. Baker, 218 Iowa 31, 253 N.W. 834.

This part of a quotation in Central States Elec. Co. v. McVay, supra, is applicable here: "The [assured-clear-distance] rule does not apply * * * where an object or obstruction which the driver has no reason to expect appears suddenly immediately in front of his automobile * * *."

IV. Plaintiff assigns error in the trial court's refusal to submit to the jury some of his specifications of negligence. It is sufficient answer to this assignment that plaintiff made no objection at the trial, in the manner required by rule 196, Rules of Civil Procedure, to any or all of the instructions on this ground and is therefore not entitled to have the objection now made considered here. R. C. P. 196; Skinner v. Polk County, 250 Iowa 1264, 1267, 98 N.W.2d 749, 751, and citations; Ritter v. Andrews Concrete Products & Supply Co., 250 Iowa 297, 301, 302, 93 N.W.2d 787, 790; Noble v. Edberg, 250 Iowa 1331, 1337, 98 N.W.2d 741, 745.

For the benefit of litigants and counsel we will say that aside from the above we find no reversible error in this assignment.

V. In overruling plaintiff's motion for new trial the district court said he believed plaintiff had a fair trial. We are not persuaded this statement is incorrect.—Affirmed.

THOMPSON, PETERSON and THORNTON, JJ., concur.

GARRETT and HAYS, JJ., dissent.

LARSON, C. J., takes no part.

BLISS and OLIVER, JJ., not sitting.

GARRETT, J. (dissenting)—I respectfully dissent, being prompted to do so by my opinion that the instruction 10-A was prejudicial to plaintiff and deprived him of a fair trial.

This instruction applied the fusee statute and is in part: "10-A. You are instructed that it is the law of this state that whenever a motor truck is stopped upon the main traveled por-

tion of a highway, or immediately adjacent to the main traveled portion of a highway at any time from a half hour after sunset to a half hour before sunrise, then the driver or other person in charge of such vehicle shall cause a lighted fusee to be immediately placed on the roadway at the traffic side of such vehicle. In this connection you are instructed that *if you find that plaintiff's truck was stopped upon or immediately adjacent to the main traveled portion of the highway at the time and place of accident, and that plaintiff failed to cause a lighted fusee to be immediately placed on the roadway at the traffic side of such vehicle, then this would constitute negligence upon the part of plaintiff*, and if you further find that such negligence, if any, of plaintiff contributed to the injuries and damage to plaintiff, then he would not be entitled to recover, and your verdict should be for the defendant. You are instructed that the word 'immediately' as used in the statute with respect to the placing of a lighted fusee, means without delay; straightway, but does not necessarily exclude all interval of time." (Emphasis supplied.)

It is true that the truck operated by plaintiff did stop, prior to the accident, with the right half or more thereof on the shoulder and that no flares or fusees were placed as mentioned in the statute, but that situation has no application to this case in view of the fact that, at all times involved herein, the truck was moving forward. In Engle v. Nelson, 220 Iowa 771, 776, 263 N.W. 505, 508, this court said:

"Then too, under the record here, the deceased had completed his work and was ready to move, and even though he had placed a 'flare' he would not be expected to leave it in the highway, and would necessarily put it out and put it back in his vehicle prior to the time that he started away. There would necessarily be an interim of time when one would be justified in not leaving a flare in the highway; * * *."

Section 321.448, Code of 1958, provides for fusees. It has reference only to vehicles which are "stopped upon or immediately adjacent to" the traveled portion of the highway. In this case the truck had previously been stopped but it was traveling forward at all times involved in this accident. When the defend-

ant reached a position where he could see the truck it was moving, slowly, perhaps, but moving, and it went on from the scene of the accident to a point some distance up the hill before stopping. Fusees are not required of moving vehicles, and when the court instructed the jury that "if you find that plaintiff's truck was stopped upon or immediately adjacent to the main traveled portion of the highway at the time and place of accident" without fusees then this would constitute negligence upon the part of the plaintiff, such an instruction is as prejudicial as though when the accident occurred the offending truck were traveling at reasonable speed a mile from the place where it had stopped.

The majority opinion strives to construe the evidence ingeniously so as to generate a jury question as to whether the truck was stopped at the time in question. The construction is ingenious but it is neither fair nor sound.

Appellant testified: "It looked like about 40, 50 feet when I first seen he was coming toward the truck. At this time I was still facing the truck with the shovel full of sand and the truck was moving slowly up the hill. * * * I would say that the semi had moved about 20 feet. * * * Q. How fast was it moving? A. I don't imagine it was moving fast enough to even move the speedometer on it. Q. * * * Just so there will be no possible misunderstanding about it, what is the fact as to whether or not at all times from the time that you first saw the lights of what turned out to be the Hanson car, from that time until after the accident had happened and you had been struck, whether or not that truck of yours was in motion moving up the hill? A. Yes, we were moving."

The appellee testified: "As soon as I came around the curve where I could see downhill I saw the headlights, recognized that it was a truck. * * * *I don't believe I ever said I recognized that the truck was stopped.* Apparently the truck was moving slowly or was stopped. * * * Apparently it was moving slowly. * * * Q. So, so far as you could tell you want the jury to understand that after you came around the curve and saw the truck, recognized that it was a truck, *that you felt that it was operating in a normal fashion, is that correct?* A. That is correct."

On cross-examination, the purpose of which was to elicit the truth, the defendant said he wanted the jury to understand that he felt the truck was operating in the ordinary manner. It is true that Gary Verwers, a guest in appellee's car when it struck appellant, testified the truck was not moving, but his testimony, given three years after the accident, was vague and uncertain in all respects. He could not recall whether the truck was on or partially off the pavement. The third man in the car was John E. Janss, 27 years old and a graduate student at the state university at the time of the accident. He said, "I can't honestly say I recall seeing it before we reached the front of the truck." He expressed no opinion as to whether the truck was moving when they passed it.

The final, positive statement of appellee, that the truck was moving was the equivalent of a stipulation which he agreed to be bound by because it was true. On direct examination he waivered in favor of what seemed advantageous, but when pressed for the facts he said when he first saw the truck he felt it was operating in the normal manner. To minimize this testimony, which is no less binding upon appellee than an admission of the fact in a pleading or a stipulation filed in the case that the truck was moving in the normal manner, is to say that the trial court would be justified in ignoring what is tantamount to a stipulation by the appellee in favor of a witness whose memory, after three years, was not too trustworthy.

The testimony of the three occupants of the Plymouth car was that they had been drinking beer for some time before they decided at ten o'clock p. m. that they would drive to Cedar Rapids to visit one of Hanson's friends whom Verwers and Janss did not even know. Further it may be noted that it was snowing and the pavement was in a somewhat hazardous condition.

There was not the least claim or suggestion that fusees or flares would have been of any assistance to the driver of the car.

There being, then, no evidence which a court or jury should consider to the effect that the truck was not moving, there was no place for an instruction regarding fusees and it was prejudicial error to give instruction 10-A as bearing upon the issue of

contributory negligence. It opened up for consideration and possible speculation by the jury a question that to all practical purposes was not in the case. The factual situation in this case brings it within the rules laid down in Engle v. Nelson, supra, where we said at pages 775, 776, 777 of 220 Iowa:

"The only purpose of placing the so-called 'flare' near such a vehicle would necessarily be to warn the travelers upon the highway of the presence of such vehicle. * * * Moreover, if the defendant in this case had full knowledge of all of the facts and circumstances, then it stands to reason that the absence of a 'flare', even if there was such absence, would be immaterial and would not warrant a finding or holding that the person in charge of the stationary vehicle was guilty of actionable negligence or contributory negligence. * * * It is elementary, and we have frequently held, that a violation of a statutory requirement is immaterial if such violation was not a direct or contributing cause of the injury."

For the reasons stated it was error for the court to give the instruction regarding fusees.—I would reverse.

HAYS, J., joins in this dissent.