Argued December 4, 1968, reargued December 11, 1969,
reversed and remanded March 18, 1970

TOKSTAD, *Appellant, v.* LUND ET AL,
*Respondents.*

466 P. 2d 938

*Sam F. Speerstra,* Salem, argued the cause for

appellant. On the brief were Rhoten, Rhoten & Speerstra, Salem.

*Otto R. Skopil, Jr.,* Salem, argued the cause for respondent Lund. On the brief were Williams, Skopil, Miller & Beck, Salem.

*Robert B. McConville,* Salem, argued the cause and filed a brief for respondents McKean.

Before Perry, Chief Justice, and McAllister, Sloan, O'Connell, Denecke and Holman, Justices.

DENECKE, J.

The plaintiff was injured when a Jeep which he was operating was struck by a vehicle operated by the defendant Lund. The McKeans were joined as defendants upon the ground that they were Lund's employer. The court directed a verdict for the McKeans and the jury returned a verdict for Lund. Plaintiff appeals.

The plaintiff contends that the trial court erred in not instructing the jury that the defendant Lund was negligent as a matter of law.

The scene of the accident was near the summit of a pass through the Cascade Mountains. It was snowing and there was packed snow on the highway. A truck had stalled blocking part of Lund's lane and all of the other lane. After the defendant Lund drove around the stalled truck he was unable to keep his vehicle upon his right side of the highway. He slid across the center of the road into the plaintiff's vehicle, which was parked in accordance with a police officer's direction on plaintiff's side of the road.

A statute requires a driver to stay upon his own

side of the highway and the law in this state is that a violation of a statute is negligence per se. Nevertheless, we have held that a failure to stay upon the right side of the road is not negligence per se if the offending driver went on the wrong side through no fault of his own. *Raz v. Mills,* 231 Or 220, 227-228, 372 P2d 955 (1962); *Harrison v. Avedovech,* 249 Or 584, 588-590, 439 P2d 877 (1968).

■ There was evidence that although the defendant Lund was upon the wrong side of the road when he struck plaintiff's vehicle, the defendant, nevertheless, was acting as a reasonably prudent person. For this reason the trial court was correct in refusing to instruct as plaintiff requested.

At the defendant Lund's request the trial court instructed the jury that a statute requires the operator of a truck that is disabled upon the highway to place red flags upon the highway so that approaching vehicles can see the flags at least 600 feet from the disabled vehicle; and that if the jury found that the plaintiff's injuries were caused solely by the failure of the driver of the stalled truck to comply with this statute, they should find in Lund's favor.

The plaintiff excepted to the giving of this instruction upon the ground that the failure of the driver of the stalled truck to put out flags had nothing to do with the collision.

■ No flags had been put out. However, we conclude that the failure to do so could not have been a cause of the collision. Therefore, the trial court should not have instructed as it did.

The defendant Lund was traveling downhill, going northwest. The truck was stalled in a diagonal direction across part of the highway. Lund testified

that the distance between the front of the truck and the snow bank at the edge of the road on Lund's side was seven feet. There is no evidence regarding how far Lund was from the truck when he first saw it or realized that it was stalled. A car which was preceding Lund by about a quarter of a mile went around the truck. When Lund was about 30 feet from the truck he first saw the plaintiff's car stopped about 30 feet beyond the truck across the highway on plaintiff's side. The truck had previously obstructed Lund's vision of plaintiff's car. Before he first saw plaintiff's car, Lund had been "letting up speed continuously" and at the place where he first saw plaintiff's car he was going 10 miles per hour. A police officer standing approximately abreast of plaintiff's car directed Lund to get over into and keep in the snow on Lund's right side. Although Lund was going only about one mile per hour at this time, he slowly slid downgrade approximately 30 feet into plaintiff's car. Plaintiff's car was parked on the low side of a banked curve of an unknown degree.

The failure of the driver of the stalled truck to put out the warning flags was not a cause of the collision. There is no indication that such warning flags would have affected Lund's actions. He saw the stalled truck, at what distance is not known, but far enough so that he slowed to 10 miles per hour by the time he was 30 feet from the truck. There was no evidence, direct or indirect, that Lund would have driven at a slower speed if he had seen red flags. When Lund observed the plaintiff's vehicle and others stopped beyond the stalled truck he proceeded cautiously and his vehicle was practically stopped when it started to slide down upon plaintiff. There was no direct or indirect evidence that if Lund had seen red flags earlier

he would not have tried to go past the stalled truck as he did. The police officer said that traffic going in Lund's direction was going through and the officer was there to direct them to try to drive on the snow on the right of the road on their way through.

In *Shelton v. Lowell,* 196 Or 430, 440, 249 P2d 958 (1952), the stalled truck did not put out flags. An oncoming truck and trailer came around a curve at a speed of 40 to 55 miles per hour at a distance of about 300 feet from the stalled truck. When the oncoming truck was only about 60 feet away from the stalled vehicle the oncoming driver realized the vehicle was stalled and for the first time applied the brakes. The implication of causation is clear: if warning flags had been put out, the oncoming driver would have had warning for at least 600 feet that there was danger ahead so he could have applied his brakes earlier and stopped safely.

In *Frame v. Arrow Towing Service,* 155 Or 522, 64 P2d 1312 (1937), the defendant towing service failed to put out warning signals that they were stopped on the highway salvaging another vehicle. A motorist came along at a speed of 43 miles per hour, which he did not diminish, struck the towed car and was deflected into plaintiff. Again, the inference is apparent: if warning signals had been put out, the oncoming motorist would have had an opportunity to slacken his speed and thus avoid the danger.

Causation is generally a question for the trier of fact to decide; however, there must be some evidence, direct or indirect, upon which the trier of fact can base its findings. We find there is no such evidence in this case and the judgment in favor of the defendant Lund must be reversed.

The trial court directed a verdict in favor of the McKeans upon the ground that there was no evidence that at the time of the accident Lund was acting as an employee of the McKeans.

Lund's residence was in Salem, Oregon. The Mc-Kean's business, Lebanon Electric, was conducted out of Lebanon, Oregon. Lebanon Electric had the work of wiring a plywood mill being constructed in Redmond, Oregon. Redmond is across the mountains, more than 100 miles from Salem or Lebanon. Lund was the foreman of the Redmond job for Lebanon Electric. The work was started in the fall. Apparently, Lund lived in Redmond most of the time the job was being performed. He testified that he received $8.40 subsistence pay per day to which he was entitled if he was on the job during all or any part of the day.

Lund drove his own car. There were no Lebanon Electric vehicles at the job site. Lund testified he was paid "travel time" only for going to Redmond initially at the start of the job and for returning at the completion of the job. From the words and context of this testimony about "travel time" the witness could be deemed to have intended to state that he was paid travel expense or he was paid for the time he spent traveling. Lund on occasion was called by Lebanon Electric to come to the Lebanon office. There was no evidence regarding whether he was paid for his time and travel expense in making these trips.

The accident occurred on December 24. Lund testified he was coming home to Salem for Christmas. Lund kept the time records for himself and the other employees on the Redmond job. The time sheet for December 24 stated that Lund was due subsistence pay and he testified he received $8.40 subsistence pay

for that date. The record also states that Lund worked eight hours straight time on that date.

Lund first testified he worked eight hours on the twenty-fourth, but he was not working at the time of the accident. He said he went to work early on the morning of the twenty-fourth, but did not remember the exact time. The accident happened about 12:45 p.m. and he said he left the job site about 90 minutes earlier. He later testified that he worked only four hours on the twenty-fourth rather than eight, and that he worked 12 hours on the twenty-third. He admitted that he made the work record out for the twenty-third to show that he worked only eight hours straight time. He was paid for eight hours straight time for both the twenty-third and twenty-fourth.

From this evidence the jury could find that Lund was paid for the time during which the accident occurred. An employer and an employee may make a variety of arrangements covering an employee going between his residence and a distant job site, including paying the employee his hourly rate for the time spent going to or from the job.

The payment of wages is evidence from which the trier of fact can find that the employee is in the service of his employer during the period for which such wages are paid.

The trial court erred in granting the defendant McKean's motion for a directed verdict.

Reversed and remanded as to all defendants.

PERRY, C. J., dissenting.

I cannot agree that the trial court was in error when he instructed the jury on the statutory duty of the driver of a disabled vehicle to set out warning signals in front and to the rear of the disabled vehicle.

The statute was enacted as a safety measure to protect all persons traveling the highway and without question the plaintiff fell within the ambit of its protection.

The reach of the statute is to give a warning of danger so that all persons traveling the highway will conduct themselves as reasonably prudent persons with knowledge that they are entering a zone of danger to themselves or others. This is amply disclosed by the decisions of this court in the *Shelton* and *Frame* cases cited by the majority.

What the majority seem to overlook is that the red flag warnings apply as a notice of all dangers incident to the situation, not just those which may appear obvious to the driver of a motor vehicle so that the traveler will not collide with the disabled vehicle.

This purpose is well expressed in the following cases:

> "* * * The statute requiring the placing of warning lights was designed not merely to protect the stalled truck and prevent motorists from colliding with it but to warn of the dangers incident to the situation. * * *" *Bunch v. Hanson,* 251 Iowa 1097, 1106, 104 NW2d 581, 585 (1960).

The statutory warnings as to stalled vehicles upon and near the traveled portion of the highway "* * * are intended to protect not only the disabled truck but to make other automobile drivers aware of the entire situation and of the dangers incident to it." *Miles v. General Casualty Co.,* 254 Wis 278, 286, 36 NW2d 66, 70.

> "The regulation requiring the placing of warning signs was designed not merely to protect the

stopped truck and prevent motorists from colliding with it, but to warn of the dangers inherent in the situation. The presence of red flags gives approaching motorists the opportunity to reduce speed and proceed with greater caution." *Brand v. J. H. Rose Trucking Company,* 102 Ariz 201, 205. See also annotations 111 ALR 1516; 67 ALR2d 12.

The basis of the majority opinion—that there was no causal connection between the negligent failure to set out the warning signals and the later collision—rests on a faulty legal conclusion drawn from the statement "[t]here was no direct or indirect evidence that if Lund had seen the red flags earlier he would not have tried to go past the stalled truck as he did," because it assumes the conclusion that a reasonable prudent person would drive as Lund did whether there was a warning sign or not.

A question of fact is presented to a jury whenever a fact is proven and an inference can be drawn from that fact that reason dictates. *Morrison v. California,* 291 US 82, 78 L ed 664, 54 S Ct 281; *James-Dickinson Farm Mortg. Co. v. Harry,* 273 US 119, 71 L ed 569, 47 S Ct 308; *McFarland v. American Sugar Ref. Co.,* 241 US 79, 60 L ed 899, 36 S Ct 498; *Meares v. Meares,* 256 Ala 596, 56 So 2d 661; *Wiley v. Sampson-Ripley Co.,* 151 Me 400, 120 A2d 289; *Cox v. Nance,* 24 Tenn App 304, 143 SW2d 897.

At the time of this occurrence, it was snowing lightly, the road was somewhat down hill in the direction Lund was traveling and icy. Lund was unable to observe any conditions existing beyond the stalled truck due to a curve in the highway. It was conclusively established that there were no warning signs

set out to the east of the stalled truck, the direction from which Lund was approaching the truck.

It would have been improper for Lund to have testified as to what he would have done had the danger warnings been given.

It is Hornbook law that a person's negligence is to be measured, not by what he did do, but by what a reasonable prudent person would have done under the same or similar circumstances.

Since it was conclusively established as a fact that the driver of the stalled truck was negligent *per se* in not giving any warning of danger as required by the statute, a reasonable conclusion could be drawn that a reasonable prudent person under the circumstances then and there existing would have brought his vehicle under control so that he could have stopped in a few feet and not been required to attempt to climb a snow bank when directed to do so by the officer.

The record discloses the reason the police officer was directing the defendant to drive on the right-hand side of the highway and along the snow bank was because the roadway ahead was partially blocked by stopped vehicles that had been proceeding in the same direction, a situation of which the defendant was unaware.

There is also evidence in the record that the officer gave a signal that could be interpreted as a command for the defendant to stop.

The factual question presented to the jury by the instruction given was whether the defendant Lund as a reasonable prudent person, under all of the circumstances then and there existing, could rightfully rely upon what he could see and therefore assume that

he had only to safely pass the truck without injury to himself or anyone else; or whether, if the warning signs had been there as required by statute, he, as a reasonable prudent person, under all the circumstances then and there existing, would have been put upon notice that he was approaching a dangerous situation that would require him to either stop and investigate or proceed in such a manner that he could stop before colliding with some unknown stopped vehicle that had become a part of the situation created by the stalling of the truck.

Causation is demonstrated when there is evidence from which a jury could find that a failure to perform a legal duty could have prevented the resulting accident. *Loibl v. Niemi,* 214 Or 172, 327 P2d 786. It is an admitted fact that the warning signs were not placed and this is negligence *per se. Frame v. Arrow Towing Service,* 155 Or 522, 64 P2d 1312, cited by the majority.

Thus, whether the defendant, under the circumstances, was lured into proceeding as he did by the lack of warning signs so that the collision occurred by reason of the stalled truck driver's negligence, and thus became a causative factor, was a question that should be answered by the jury and not by this court. Certainly reasonable minds could conclude that, had Lund been warned, he as a reasonable prudent person would have proceeded on the icy highway so that he could have stopped in less than 60 feet.

The majority also find that the trial court erred in directing a verdict in favor of McKeans, who were the employers of Lund. They base this upon the fact that the time sheet, which was kept by Lund and forwarded by him to McKeans, disclosed that he had

charged the McKeans for an 8 hour day of work on December 24th, the day of the accident. Therefore, they say, a jury could find that he was paid for the time during which the accident occurred.

Assuming such a fact could be reasonably inferred, it is still necessary for the doctrine of *respondeat superior* to apply to have some evidence that at the time of the accident Lund was acting in the furtherance of his employer's business. *Eckleberry v. Kaiser Foundation et al,* 226 Or 616, 359 P2d 1090, 84 ALR2d 1327; *Knapp v. Standard Oil Co.,* 156 Or 564, 68 P2d 1052; *Hantke v. Harris Ice Machine Works,* 152 Or 564, 54 P2d 293.

In furtherance of his employer's business "is not synonymous with the phrase, 'during the period covered by his employment.' " *Hantke v. Harris Ice Machine Works,* supra, at p. 567.

The evidence is undisputed that Lund was on his way home to spend Christmas with his family. The evidence is undisputed that Lund was using his own vehicle and was not paid mileage to and from the job site except at the beginning of and completion of the job for his employer at Redmond, Oregon. The evidence is conclusive that the job at Redmond had not been completed prior to the accident.

The record is devoid of any evidence that at the time of the accident Lund was doing anything in the furtherance of his employer's business. The fact that an employee falsified his work sheet will not support an inference that the employee was about his employer's business.

I would affirm the judgment of the trial court.

SLOAN, J., dissenting.

I join with Chief Justice PERRY that it was a jury

question as to whether or not the failure to place the warning flags was a cause of the accident. However, since the case is to be remanded for a new trial, I concur in the majority opinion that the employment status of Lund was a jury question.