J. J. Brown, appellant, v. Compton & Roush, Inc., appellee.

No. 48041.

(Reported in 53 N.W.2d 164)

May 6, 1952.

666

John Paul Jones and William H. Fulton, both of Des Moines, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, of Des Moines, for appellee.

WENNERSTRUM, J.—Plaintiff sought recovery of damages by reason of personal injuries received by him when he, while standing in front of his own tractor on his farm, was pushed backward by the movement of it and forced against the teeth of a near-by harrow. It is claimed that the tractor motor was started by the defendant's employee without ascertaining whether or not the tractor was in gear. The case was tried to the court, a jury having been waived. The trial court found that the defendant's employee was negligent but also found that the plaintiff was negligent in standing in front of the tractor at a time when the defendant's employee was endeavoring to start the tractor's engine. The trial court held that plaintiff was guilty of contributory negligence and denied recovery. The plaintiff has appealed.

The appellant is a farmer who resides on a farm approximately four miles west of West Des Moines. On June 27, 1950, he was unable to start his tractor and sought the services of Compton and Roush who are implement dealers in West Des Moines. Walter N. Fuller, an employee, was sent to the appellant's farm for the purpose of endeavoring to put the tractor in operating condition. He first cleaned the points on the magneto and then did work on the timer. While the employee was endeavoring to put the tractor in proper condition to start it, he was on the right side of the tractor. The appellant stood in front of the tractor watching him and was approximately two feet away. Inasmuch as the facts are of importance in our consideration of this case, we shall set out in part certain portions of appellant's testimony, as follows:

"I stood right in front of the tractor watching him, maybe a couple of feet away from the tractor. * * * I did not at any time offer Mr. Fuller advice or assistance while he was working on the tractor. I noticed he was working on the timer. I do not know anything about repairing a timer myself. I never repaired one. Mr. Fuller finally got through working on the timer and

reached over and stepped or pushed on the starter and it started up right now. I had not been at the controls of the tractor at all. I had not been anywhere around the tractor except up at the end watching him work. When he stepped on the starter, the whole tractor started. It was going forward. I tried to get out of the way. It was only about twenty feet from this shed. I couldn't get out of the way until it hit the shed, and then I couldn't get out of the way because there was boards there, and I couldn't get over the top of it. * * * The tractor and I finally wound up in a harrow. * * * Mr. Fuller was standing right in front of the right, rear big wheel when the tractor started in motion. He jumped up on the tractor towards the control seat. He tried to stop it. He didn't get it stopped until after I was in the harrow. * *. * I was not at the controls of the tractor any time from the time I went into West Des Moines until the accident happened. I was not at any time on the control seat. * * * The tractor was in fourth gear the morning when it leaped into motion on me. * * * The only conversation I recall with Mr. Fuller as to how the accident happened, he said 'We both might have got killed.' * * * I have no way of knowing what the throttle setting was on this tractor at the time Mr. Fuller started it, only by the way it went."

On cross-examination Mr. Brown further testified in part, as follows:

"Q. How did you happen to know that this tractor was in fourth gear? A. I could tell by the speed. Q. Is that the only way you could tell? A. Well, the lever was forward. Q. How did you know that? A. Because I seen it. Q. Is forward in fourth gear? A. Yes, sir. Q. Now, where were you standing? A. Right in front of it. Q. In front of the grill? A. No, in front of the cultivator. Q. In front of the cultivator, on which side of the grill? * * * A. I was on the right side. Q. And where is this gear shift lever? * * * A. It is up there by the seat. Q. And what is in between the gear shift lever and where you were standing? A. Well, the cultivator was in there. Q. Any part of the tractor itself in there? A. Well, the back end of it was there. Q. Isn't it true, Mr. Brown, that in order to see this gear shift lever in fourth gear, you would have to be standing out toward the end of the cultivator bar? A. Well, I might be. Q. What

was the answer? A. I might be, I don't know. . Q. Then, you might have been standing out towards the end of the cultivator bar, is that correct? A. I wasn't standing out near the end of the cultivator bar. Q. But you did see the gear shift lever in fourth gear? A. No—well, I don't know whether it was in fourth gear, but the way it went it must have been in fourth gear. Q. Well, didn't you testify a minute ago that you saw it in that particular gear? A. Well, I don't know whether you can see it or not."

On redirect examination appellant further testified in part, as follows:

"I did not know the tractor was in gear when Mr. Fuller was preparing to start it. I don't believe I could have seen the gear shift lever from where I was standing when he started it, and my estimate of speed on the tractor and the gear position is based solely on the speed at which it started."

Inasmuch as there appears to be a conflict in the evidence of the appellant and the witness for the appellee, we set forth in part the testimony of Walter Fuller, the employee of the appellee who was working on the tractor at the time of the appellant's injury, as follows:

"I cleaned the points in the magneto, asked Mr. Brown to put it in fourth gear for me and together we rocked the tractor backwards, raising the magneto cam to the high point on the point so I can adjust the points. We rolled it together, the back wheels. I rolled on one and he rolled on the other. I was on the right-hand side, the right rear. Mr. Brown was on the other wheel, the left one. He was helping me rock it back. I asked Mr. Brown to put the tractor in fourth gear. I would say it was in fourth gear. He put it in gear for me. After I got the points cleaned and adjusted, I put the top and the back on the magneto. Then we started the tractor. I just reached around with my left hand on the starter. I was ready to check the spark at the magneto had the tractor not started. The tractor started. * * * Q. Did you mention to him that you were going to start the tractor? A. I believe I did when I finished with the mag. I think I said something about, 'Well, I wonder if it will run.' "

On recross-examination the employee further testified in part, as follows:

"Q. You don't mean to say you would have started it knowing it was in gear on purpose, and just depending on that switch to stop it? You wouldn't have done that, would you? A. Well, not that I would have known it. Q. As a matter of fact, you just forgot it had been put in gear? A. I didn't know that the man hadn't taken it out. Now I didn't pay too much attention to that. Q. You didn't check it at all. He hadn't been back up on the seat since he put it in gear, had he? A. Not that I recall, no."

Inasmuch as this case was tried to the court, a jury being waived, we are naturally concerned with the court's findings of fact and conclusions of law. The material findings of fact of the court are: the tractor was in fourth gear when it started; the testimony is in conflict on the point of how the lever came to be in fourth gear, the plaintiff (appellant) stating he saw the lever forward in fourth gear and Fuller, the appellee's witness, testifying that Brown himself put the lever in fourth gear; Fuller stated he should have checked the gear before starting the engine; plaintiff (appellant) stood about two feet in front of the tractor while it was being repaired, knowing that the lever was in fourth gear, or having ample opportunity to observe the same and being informed by Fuller that the engine was about to start or being apprised of the same by the noise of the starter; that each party was negligent in this matter, in that Fuller should have checked the gear and the position of Brown in front of the tractor before he started the engine, and Brown should have stepped to one side or ascertained that the gear was in neutral when the engine was started if he was going to stand in front of the tractor.

The court in its conclusions of law held that Brown was negligent either in standing in front of the tractor when the engine was started, having observed the lever was in a forward position in fourth gear, or in not ascertaining whether the lever was in neutral, and that one or the other of these facts contributed to the injury which appellant sustained and that such negligence precluded a recovery by Brown.

I. It might appear that the trial court held from a factual

standpoint as well as from a law standpoint that the appellant was guilty of contributory negligence. However, despite the statement in the court's conclusions of law, it must be kept in mind that it was for the trial court, sitting in place of a jury, to determine whether the appellant was guilty of contributory negligence. This it did and determined that the appellant's act in standing in front of the tractor under the circumstances disclosed by the evidence was negligence. In connection with our consideration of the court's statement relative to its conclusions of law we should call attention to the fact that at the close of all the evidence counsel for the appellee dictated a motion for a directed verdict based primarily on the ground that the appellant was guilty of contributory negligence. This motion was not ruled on at that time and it will be observed that no mention is made of it in the court's announced conclusions of law. We cannot conclude that the statements therein made constituted a ruling on the motion for a directed verdict.

If the case had been tried to a jury the court unquestionably would have instructed it that if the acts of the appellant were negligent and in any degree contributed to his injury he could not recover. It is our conclusion that the court was in substance applying this rule of law to the facts in the present case and was not holding as a purely legal proposition that there could not be any recovery because of appellant's contributory negligence. And this is particularly true when we consider that in its findings of fact it observed that appellant was negligent. The announced conclusions of law were in substance merely additional findings of fact which it was applying to accepted rules of law.

■■ II.   From a consideration of the evidence, which we have heretofore set out in considerable detail, it will be observed that there is an appreciable variance relative to what the appellant did or did not do. If the case had been tried to a jury it would have had to determine whether the appellant was guilty of contributory negligence. Although there is a difference in the testimony of the respective witnesses a jury could have found that the appellant was guilty of contributory negligence. The trial court, acting as a jury, reached such a conclusion and so found. It is only where but one conclusion can be reached and

the facts are clear and undisputed that the question of contributory negligence should not be submitted to a jury. Fitter v. Iowa Telephone Co., 143 Iowa 689, 693, 694, 121 N.W. 48; McSpadden v. Axmear, 191 Iowa 547, 551, 181 N.W. 4; Weber v. Hansen, 241 Iowa 904, 909, 43 N.W.2d 766, and cases cited. This is not the situation in the instant case. If we were to sustain appellant's interpretation of the evidence we would have to deny the trial court the right of evaluating the evidence where a jury has been waived and place our own interpretation on it. This is not our province under the circumstances here presented. The authorities cited by appellant are applicable to the facts in the particular cases referred to but are not controlling in the situation herein presented.

III. Where the trial court, which has heard a law case without a jury, makes certain findings of fact they cannot be disturbed on appeal unless there is a lack of evidence to support them. Weber v. Hansen, supra. An appellate court is not justified in placing its interpretation on fact questions which have been submitted to a trial court for determination in a law case. Coble v. McChane, 233 Iowa 54, 58, 8 N.W.2d 755.

We find no basis for reversal.—Affirmed.

All JUSTICES concur.