W. O. Garrard et al., appellants, v. Wilbur A. Feild, appellee.

No. 50828.

(Reported in 119 N.W.2d 796)

FEBRUARY 12, 1963.

John D. Randall and John D. Randall, Jr., both of Cedar Rapids, for appellants.

Ross H. Sidney of Austin, Grefe & Sidney, of Des Moines, for appellee.

PETERSON, J.—This case involves a collision between plaintiff Garrard's large truck and defendant's automobile on October 8, 1959. Garrard's truck was carrying a load from Memphis, Tennessee, to St. Paul, Minnesota. The driver was E. L. Houk. The reserve driver was Billy Scott. The truck was proceeding north on Highway No. 218 and was wholly on the east side of the road. The collision occurred about seven miles south of Cedar Rapids. Two automobiles were proceeding south on the west

side of the highway. When the lead automobile driven by Mr. Jerry Larimer was about even with the truck, the rear automobile driven by defendant's son suddenly veered out of the west lane into the east lane. The truck and automobile collided head on. Mr. Feild, Jr., driving the car, and his fiancee, Miss Davis, both met death. The car was demolished and the truck was severely damaged. The amount of Garrard's claim was his repair bill of $4914.33. Mr. Scott's claim was combined and tried with Mr. Garrard's case. He claimed $2500 for personal injuries. The verdict of the jury was in favor of defendant. Plaintiffs appealed.

There are only two questions before us:

1. Did the trial court err in failing to direct a verdict in favor of plaintiffs on the question of liability, leaving only the amount of damages to be decided by the jury?

2. Was the verdict of the jury in favor of defendant the result of sympathy, bias, passion or prejudice created by reason of misconduct on the part of appellee or his counsel?

I. Garrard's truck was what is known as a Mac type of tractor and trailer manufactured by Beneke Corporation. It was very heavy and the load carried at the time of the wreck consisted of 32,000 pounds.

It is unfortunate that Mr. Houk, the driver of the truck, did not testify. Plaintiffs said he could not be found. It was also unfortunate that Mr. Larimer, driver of the lead automobile when the two cars were approaching the truck from the north, was not called as a witness by either party. The record shows he was available.

Such facts as shown were developed through the testimony of several witnesses. Plaintiff called Mr. Richard Reddick, a highway patrol officer, who was about four miles distant when called about the wreck. He arrived at the scene within twenty minutes. He came soon enough so he was able to see where the wreck occurred and where the truck and car came to rest after the collision. He was able to investigate and testify as to the exact spot of the collision. It was evident on the pavement because of the debris left at the point of collision and because of several gouges in the pavement. It was near the intersection

of the highway with the Swisher Road. Mr. Reddick measured the distance, and it was 276 feet 2 inches from the point of collision to where the truck and car came to rest. The truck pushed the car and veered to the west so that the vehicles stopped west of the concrete highway.

Mr. Joseph Parrott testified he was traveling north on Highway No. 218 between 300 and 400 feet back of the truck. He stated the pavement was dry and the truck had all lights on. He saw the two cars heading south on the west side of the pavement. The rear car was gaining on the lead car. The lead car had its two right wheels off the highway, and ran along the shoulder for a short distance before starting to make the turn to the right onto the Swisher Road. The second car (Feild car) was near the lead car when it made what he called "an immediate turn"; turning from the highway's westerly lane to the easterly lane occupied by the truck.

Mr. Raymond Eldredge testified he was driving a transport for the Shell Oil Company heading north toward Cedar Rapids about one and one-half blocks back of the Garrard truck. The night was dark but all vehicles ahead of him had their lights on. He saw the two cars proceeding south on the west one half of the pavement. He testified the second car (Feild) "was following awfully close". As the two cars approached near the truck the second car turned left quickly in front of the Garrard truck, which was proceeding north in the right-hand lane.

Billy Scott was the relief driver on the truck and at the time of the collision was sleeping in what is known as the "sleeper." The sleeper is located between the rear end of the cab and the front seat. The force of the collision "knocked him out." He regained consciousness a short time later and found himself landed on the floorboard.

Richard Reddick was recalled as a witness for defendant. He stated he inspected the Larimer car. He said it was an older model of a Pontiac car. Mr. Reddick testified, "I examined the Larimer car and found that the stoplight on the car was not in operating condition. I tested this by having Mr. Larimer pump his foot brake up and down in the vehicle and I stood at the rear of the vehicle and observed the lighting equipment on the rear.

The automobile was not equipped with the normal direction indicator."

Miss Hazel Williams was subpoenaed as a witness for defendant. She was riding in the Larimer car on the evening when the accident occurred. She testified the Larimer car was immediately ahead of the Feild car and that as Mr. Larimer approached the Swisher intersection he slowed his car. She said she observed the collision by looking back over her left shoulder. The Larimer car was off the highway and starting to turn when the collision occurred.

The only other witnesses were the photographer who came on the scene very quickly after the collision, workmen who had repaired the truck and the defendant, Wilbur A. Feild. Mr. Feild testified where he lived, where he worked, that he owned the car, that his boy was 21 years of age at the time of the tragedy; that the boy worked for Collins Radio Company in Cedar Rapids and that he had known Miss Davis for over three years.

II. Appellants assign as error the failure of the trial court to sustain their motion for a directed verdict in their favor as to appellee's liability and failure of the trial court to sustain appellants' motion for new trial on the same basis.

It is elementary that verdicts are seldom directed in favor of a party upon whom rests the burden of proof. There are exceptions but they are rare. Hebert v. Allen, 241 Iowa 684, 41 N.W.2d 240, 242; Rozmajzl v. Northland Greyhound Lines, 242 Iowa 1135, 49 N.W.2d 501; Barnes v. Gall, 251 Iowa 921, 103 N.W.2d 710, 713.

Plaintiffs' counsel contends the physical facts, with what evidence was produced, show without question defendant's intestate was negligent, that such negligence was the proximate cause of plaintiffs' damages and that neither Houk, the driver of the truck, nor Scott, the relief driver, was guilty of contributory negligence.

When we contemplate directing a verdict as a matter of law, we must approach the situation from the angle of reasonable minds having no difference of opinion as to the above stated three factors. The jury apparently had a difference of opinion

and our question is as to whether the record discloses an exception to the general rule.

The situation is not as simple as appellants would have us believe. We will analyze the facts, and the inferences which can reasonably be drawn therefrom. We have often held the question of what inferences are to be drawn from a certain state of facts is for the jury. This question was discussed in the recent case of Hebert v. Allen, supra, which states at page 687 of 241 Iowa: "The court, however, is not at liberty to select one of various inferences that may be drawn from the evidence, and upon that determine the case as upon a question of law. It is for the jury, and not the court, to determine what inference is to be deduced from the facts proven."

It is equally as important to consider the question of the proximate cause as it is to consider Mr. Feild Jr.'s negligence. The instructions of the trial court clearly covered the matter. Absence of either factor as to defendant justifies the jury's verdict. The jury could consider from the evidence that Mr. Larimer's car played a vital part in the collision. We are somewhat handicapped by the fact that neither party subpoenaed Mr. Larimer as a witness. The record does show his car was moving south on the west side of the highway ahead of the Feild car. Two witnesses testified Feild was driving fast and was quickly moving up close to the Larimer car. Reddick, the highway patrol officer, tested Larimer's car. The jury could find that Feild coming close behind Larimer's dark car with stoplight and rear light inoperative faced a sudden decision. It could find from the evidence that Feild Jr. instinctively turned his car to the left to avoid striking Larimer's unlighted car in the rear. Turning left he drove into the path of the truck. Under such conditions the jury could find the proximate cause of plaintiffs' damage was Larimer's defective car.

If the jury decided the proximate cause of plaintiffs' damages was Larimer's fault, it could decide for defendant. Having so decided, it was not necessary that the jury proceed further to consider the question of contributory negligence. One of the three essential elements for recovery was absent.

If the jury decided "proximate cause" controlled the case,

and Larimer's actions and car were the basis therefor, and ceased consideration of contributory negligence, it would be justified in so doing. However, in case the jury had some discussion as to contributory negligence we will give it brief consideration.

Was the matter of absence of contributory negligence so certain, as to both plaintiff Garrard's driver and Mr. Scott that reasonable minds would not differ? We do not have the benefit of the testimony of the driver. No witness testified as to the driver and his actions. The question could reasonably occur to the jury; did he maintain a proper lookout? Or they could have discussed other contingencies. Appellants' counsel vigorously contends that surely there could be no contributory negligence on the part of Mr. Scott, who was asleep. The jury could have reached a verdict on the basis of proximate cause and could have decided that it, therefore, was not necessary to consider the question of Mr. Scott's contributory negligence. It was not for the trial court to say as a matter of law, and it is not for us to say. If an answer was needed, it was for the jury. Brown v. Compton & Roush, Inc., 243 Iowa 665, 670, 671, 53 N.W.2d 164, 167, stated: "It is only where but one conclusion can be reached and the facts are clear and undisputed that the question of contributory negligence should not be submitted to a jury. Fitter. v. Iowa Telephone Co., 143 Iowa 689, 693, 694, 121 N.W. 48; McSpadden v. Axmear, 191 Iowa 547, 551, 181 N.W. 4; Weber v. Hansen, 241 Iowa 904, 909, 43 N.W.2d 766, and cases cited."

The facts in the instant case do not establish an exception to the general rule that verdicts are rarely directed in favor of a party upon whom rests the burden of proof.

III. The other assignment of error made by appellants is, the verdict of the jury in favor of defendant was the result of sympathy, bias, passion and prejudice engendered by misconduct on the part of appellee and his counsel. As hereinafter outlined appellants have no right to raise the question in this court, but it is advisable that we consider the facts.

Plaintiffs' contention as to this matter arises largely because of an incident which occurred in the courtroom at the time of the trial. On the first day of the trial Mrs. Feild was seated at the

counsel table immediately back of defendant, her husband. At intervals during the day Mrs. Feild was observed weeping. She was seated only a few feet from the jury.

On the morning of the second day of trial, and out of hearing of the jury, plaintiffs' counsel moved the court for an order requiring that Mrs. Feild be removed from the counsel table and placed in the section of the courtroom occupied by the public. The trial court stated that it was not an unnatural thing for Mrs. Feild to weep in view of the tragic death of her son being again so keenly directed to her attention through the testimony and photographs in the case. The court asked Mr. Feild to have Mrs. Feild sit in the courtroom back in the section open to the public. Mr. Feild and his counsel immediately complied with the court's request and after the first day of the trial Mrs. Feild was far removed from the counsel table and from close presence to the jury.

Plaintiffs' counsel also later objected to defendant placing Mr. Feild on the witness stand, stating that his testimony as to his son was prejudicial to plaintiffs' cause.

Plaintiffs' counsel had stated in the pretrial conference that he would admit the fact of the death of the son so that the details as to his death would not need to be repeated before the jury. His argument was that the jury should not be subjected to matters involving sympathy but should be cautioned to simply try the issues involved in the case.

The above occurrences were not sufficiently drastic to create any undue feeling of bias, passion or prejudice on the part of the jury, and did not constitute misconduct on the part of either defendant or his counsel. Immediately upon the court's attention being directed to Mrs. Feild's actions, the court arranged that such a situation and such actions be not repeated through the remainder of the trial.

Apparently appellants' counsel was not disturbed or exercised about this phase of the case until the time came for filing of the motion for new trial. When the instructions were presented by the trial court to counsel for both parties no objection was made by appellants' counsel as to any misconduct. Appellants' counsel made only one request in connection with the in-

structions. He objected to Instruction No. 3 which instruction was merely a statement that the burden was upon plaintiffs to establish that defendant's driver was negligent by preponderance of the evidence. The instruction was normal and correct. In Shover v. Iowa Lutheran Hospital, 252 Iowa 706, 724, 107 N.W.2d 85, 96, the court said: "One complaint now urged against submission of these charges was not made before the instructions were read to the jury, as required by rule 196 * * *. Defendant is therefore not entitled to have this complaint considered here. Bunch v. Hanson, 251 Iowa 1097, 1109, 104 N.W.2d 581, 587, and citations."

In the earlier case of Auen v. Kluver, 250 Iowa 619, 626, 95 N.W.2d 273, we said with reference to a charge which appellant had made as to misconduct as follows: "No motion to strike the objectionable matter was made and there was no motion for mistrial due to the alleged misconduct of plaintiffs' counsel. * * * We, therefore, cannot consider it in this appeal."

In the case at bar, after appellants' counsel had requested the removal of Mrs. Feild from the counsel table and the court had promptly complied with his request, he made no further complaint and appellants did not consider the matter of sufficient importance to file a motion for a mistrial. We hold there was no basis for the charge of misconduct, but if there was any, we cannot consider it on this appeal.

The trial court was right in failing to sustain a motion for directed verdict, and its order and judgment refusing to grant a new trial was correct.—Affirmed.

All JUSTICES concur.